COMMONWEALTH of Pennsylvania, Appellant,

v.

**Edward S. ROGERS, Appellee.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1999.

Filed Nov. 22, 1999.

Patricia J. McLean, Asst. Dist. Atty., Butler, for Com., appellant.

Andrea I. Konow, Pittsburgh, for appellee.

Before POPOVICH, ORIE MELVIN and HESTER, JJ.

ORIE MELVIN, J.:

¶ 1 This is an appeal by the Commonwealth of Pennsylvania from an April 14, 1999 Order granting Appellee Edward S. Rogers' motion to suppress. The issue is whether the trial court correctly concluded that Trooper Banovsky did not have sufficient reasonable suspicion of criminal activity to justify Appellee's initial detention and the subsequent canine sniff search of his vehicle. We reverse.

¶ 2 On January 9, 1998, Trooper Banovsky observed Appellee's vehicle traveling southbound on Interstate 79, passing other traffic. The Trooper positioned his vehicle behind Appellee's and followed him for 4/10ths of a mile, clocking his speed at 73 mph in a posted 55–mph zone. Trooper Banovsky also observed the vehicle to be bearing an expired Tennessee temporary registration plate. A traffic stop was initiated at approximately 2:22 P.M. Upon approaching Appellee's vehicle, he found Appellee to be in such a nervous and trembling state that he attempted to place him at ease by advising him to take a deep breath and relax. The trooper questioned Appellee as to where he was going. Appellee responded by telling him he was going to Tennessee to return the vehicle to the seller.

¶ 3 Appellee provided the Trooper with a West Virginia title issued to the vehicle, an incomplete Tennessee Certificate of Title extension form (missing the name of the transferee and odometer reading) and a Tennessee Department of Revenue form dated December 17, 1997. Appellee also provided a Texas driver's license. In addition to the incomplete information on the title extension form, the Trooper noted that the name on the driver's license did not match the name on the Department of Revenue form. Specifically, the license read Edward Stanley Rogers while the revenue form listed the purchaser as Edward Stanley and was signed in the same manner with a Pennsylvania address that included a fraudulent six-digit zip code. When asked who lived at that address the Appellee stated "I don't know, the guy I bought the car off of put that down and told me not to worry about it."

¶ 4 Trooper Banovsky also noticed behind the driver's seat an open box of "Tide" powdered laundry detergent, an

open box of "Bounce" fabric softener dryer sheets, and a used roll of "Scotch" packaging tape. Trooper Banovsky next questioned Appellee as to where he was coming from. Appellee told him he had been visiting a friend in Butler, but could not recall the address. Appellee was then asked to exit the vehicle, whereupon Trooper Banovsky patted him down. The Trooper questioned Appellee as to whether there was anything illegal in the vehicle. Appellee evaded answering the question by attempting to explain how he had purchased the vehicle, and was trying to sell it in Pennsylvania. The Trooper then asked for consent to search the vehicle. Appellee refused consent, and the Trooper inquired as to his reason for refusal. Appellee stated, "I don't know if there's anything in the door panels or air vents, I haven't searched the car yet."

¶ 5 At this point the Trooper requested a criminal history check. The check was positive for prior drug convictions. The Trooper continued the investigation by requesting a K–9 unit to perform a drug sniff of the exterior of the vehicle. Allegheny County Police Officer Kent Maier and a K–9 named Rosie responded to the scene. Rosie checked the exterior of the vehicle with a positive alert at the driver's side door. Whereupon, without prompting, Rosie jumped inside the open driver's window immediately indicating to the right rear of the vehicle. The search was then terminated. Based on the positive results the vehicle was secured and towed to the Butler State Police barracks where a second dog sniff was conducted by another K–9 named Ebony with the same results. A search warrant was obtained and an interior search of the vehicle revealed a large black nylon bag. The bag contained 24 individually wrapped "bricks" of suspected marijuana weighing approximately 52 pounds.

¶ 6 Appellee was then arrested and charged with violations of the Controlled Substance Drug, Device and Cosmetic Act, specifically 35 P.S. § 780–113(a)(30), Possession with the Intent to Deliver a Controlled Substance; 35 P.S. § 780–113(a)(16), Possession of a Controlled Substance; 35 P.S. § 780–113(a)(32), Possession of Drug Paraphernalia; as well as two summary motor vehicle violations. On March 23, 1998, Appellee filed a motion to suppress all statements and physical evidence that was obtained pursuant to an allegedly unlawful detention. A suppression hearing was scheduled for March 3, 1999, before the Honorable Martin J. O'Brien, P.J. At the time of the hearing, since the facts were not disputed the parties stipulated to the testimony that would have been presented by way of submitting to the court relevant portions of the police reports and other documents as well as briefs for the court's consideration. On April 14, 1999, the suppression court issued a Memorandum Opinion and Order granting suppression. This timely appeal followed.[1]

¶ 7 The suppression court is required to make findings of fact and conclusions of law as to whether the evidence was obtained in violation of an accused's constitutional rights. *Commonwealth v. Wilmington*, 729 A.2d 1160, 1162 (Pa.Super.1999) (*en banc*). Our standard of review of a ruling on a motion to suppress is well settled. When the Commonwealth appeals from a suppression order we must consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879 (1998). If the evidence supports the suppression court's finding of facts on the motion to suppress, this Court may reverse only when the

1. We note appellate review of a suppression order is permissible where the Commonwealth certifies that the order substantially handicapped or terminated its prosecution of the case. *Commonwealth v. Blee*, 695 A.2d 802 (Pa.Super.1997). Instantly, the Commonwealth has made the requisite certification. Hence, this appeal is reviewable.

legal conclusions drawn from those facts are erroneous. *Commonwealth v. Bruce*, 717 A.2d 1033 (Pa.Super.1998).

¶ 8 Instantly, the Commonwealth does not contest the suppression court's legal conclusion that Appellee was subjected to an investigative detention. We must therefore consider whether Trooper Banovsky was able to point to specific and articulable facts which, taken together with the reasonable inferences from those facts, reasonably indicate that criminal activity might have been afoot. *Commonwealth v. Francis*, 700 A.2d 1326, 1328 (Pa.Super.1997) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Furthermore, whether reasonable suspicion exists must be based on the totality of the circumstances. *In the Interest of D.M.*, 556 Pa. 160, 727 A.2d 556, 557 (1999) (citing *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). As noted by our Supreme Court:

> It is not the function of a reviewing court to analyze whether each individual circumstance gave rise to reasonable suspicion, but rather to base that determination upon the totality of the circumstances—the whole picture. The evidence collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Id.* at 168, 727 A.2d at 559–560 (citation omitted).

¶ 9 In reaching its conclusion that the detention was illegal the suppression court stated:

> In considering the totality of the circumstances, however, the Court finds that this information does not sufficiently support a finding of reasonable suspicion that [Appellee] Rogers was committing a criminal act, namely the transportation and possession of drugs. [Appellee] Rogers['] nervousness is reasonable under the circumstances of being stopped by the police for traveling at an excessive speed. Further, the discrepancies in the documentation give rise at most to

a belief that [Appellee] Rogers was operating the vehicle without proper title, registration, or even ownership. Trooper Banovsky's contention, as stated in his affidavit of probable cause for issuance of the search warrant, that these laundry supplies allegedly can be used to mask the odor of marijuana is not sufficient to form a reasonable suspicion of drug activity.

Suppression Court Opinion, 4/14/99, at 7. We disagree.

¶ 10 The facts and circumstances surrounding this case give rise to a belief in the occurrence of criminal conduct. After lawfully stopping Appellee for Vehicle Code violations Trooper Banovsky found Appellee to be in an extreme state of nervousness. The paperwork for the vehicle was both incomplete and conflicting. When asked to explain, the Appellee acknowledged the Pennsylvania address was fictitious. Additionally, while obtaining the paperwork from the Appellee the trooper detected open boxes of laundry detergent and fabric softener sheets in the backseat along with packaging tape. The Trooper knew from his experience in investigating narcotics offenses that these laundry supplies were commonly packaged with certain drugs to mask their odor so as to avoid detection during transport. *See Commonwealth v. Epps*, 415 Pa.Super. 231, 608 A.2d 1095, 1096 (1992) (holding that officer who noticed broken vent window on a car and subsequently stopped its driver, possessed reasonable suspicion based on the knowledge gained from his experience in investigating car thefts that thieves often gain entry by breaking vent windows, rather than the car's more conspicuous windows), *see also, Commonwealth v. Johnson*, 444 Pa.Super. 289, 663 A.2d 787, 789 (1995) (finding officer had reasonable suspicion where he saw defendant throw plastic baggies from car window, noted upon inspecting the baggies that their corners had been cut, and knew from experience investigating narcotics of-

fenses that corners of plastic baggies are used for drug packaging). In light of these circumstances, we find he acted pursuant to an articulable, particularized suspicion, based on objective physical evidence and a trained trooper's reasonable inferences therefrom, that a specific crime was being committed. Accordingly, Trooper Banovsky's reasonable and articulable suspicion conferred the imprimatur of legality on his further detention and investigation of the Appellee.

¶ 11 Appellee relies on *Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177 (1992) and *Commonwealth v. Sierra*, 555 Pa. 170, 723 A.2d 644 (1999) to support his assertion that the trooper did not have the requisite reasonable suspicion. Such reliance is misplaced. In *Lopez*, the officer testified that he had not observed any indicia of criminal activity on the part of Mr. Lopez, but continued questioning after finding his paperwork to be in order based merely upon his "policeman's intuition." *Lopez*, 609 A.2d at 180. Similarly, in *Sierra*, the officer testified that he had no indication of any on-going crime and was unable to articulate any basis for his suspicion beyond his observation of boxes of loose motorcycle parts in the vehicle. *Sierra*, 555 Pa. at 177, 723 A.2d at 647 n.5. The case now before us is entirely distinguishable on the basis of what the trooper observed and the reasonable inference from his experience. The police in both *Lopez* and *Sierra* had no basis to believe that the defendants were engaged in any criminal activity at the time of the detention, while the police here could point to specific and articulable facts, which justified the further detention of Appellee.

¶ 12 Our final inquiry concerns the validity of the initial dog sniff of Appellee's vehicle. Under federal law a canine sniff is not a search. *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). However, our Supreme Court has determined that the use of trained dogs to sniff for the presence of drugs does constitute a search under Article 1 § 8 of the Pennsylvania Constitution. *Commonwealth v. Johnston*, 515 Pa. 454, 530 A.2d 74 (1987). In *Johnston*, the police conducted a dog sniff search of individual storage lockers from the common area of a self-storage facility after receiving permission from the building's owner. Our Supreme Court held such a search was constitutionally permissible provided: (1) the police are able to articulate reasonable grounds for believing that drugs may be present in the place they seek to test; and (2) the police are lawfully present in the place where the canine sniff is conducted. *Id.* 515 Pa. at 466, 530 A.2d at 79.

¶ 13 In *Commonwealth v. Martin*, 534 Pa. 136, 626 A.2d 556 (1993) our Supreme Court distinguished *Johnston* as involving the use of a canine sniff to search a place rather than a person. Relying on the fact that the defendant had been carrying the satchel when the police detained him and seized the bag for the purpose of subjecting it to the canine sniff, the Court in *Martin*, noting that "an invasion of one's person is, in the usual case, [a] more severe intrusion on one's privacy interest than an invasion of one's property," concluded that the search was subject to the higher standard of probable cause. *Id.* 534 Pa. at 142, 626 A.2d at 560.

¶ 14 Here, the suppression court determined that the canine sniff of the exterior of the Appellee's vehicle was a search of a place and applied the *Johnston* principles. The suppression court found that Trooper Banovsky lacked reasonable suspicion to believe drugs may be present in the vehicle and therefore the police presence beyond the time necessary to resolve the traffic violations was unlawful. We agree with the suppression court's application of *Johnston* to the facts of this search, however, we find its conclusion to be erroneous.

¶ 15 In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court of the United States declared that a police officer who reasonably

suspects an individual is engaged in illegal activity may stop and question the individual without violating the Fourth Amendment. As previously discussed, Trooper Banovsky lawfully stopped Appellee's car based upon his observations of traffic violations. During the stop the trooper acquired additional reasonable articulable suspicion that Appellee was engaged in illegal activity. Trooper Banovsky called for the drug canine based upon a reasonable and articulable suspicion of illegal activity other than that which triggered the initial traffic stop. Because this investigative detention of Appellee was directly related to the initial traffic stop, there was no unconstitutional seizure of either Appellee or the automobile. *Commonwealth v. Pless*, 451 Pa.Super. 209, 679 A.2d 232, 233 (1996), *see also Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (holding traffic stop by police held analogous to a *Terry* stop). Accordingly, Trooper Banovsky was lawfully present in the place to be searched. Consequently, when the dog alerted that drugs were present in Appellee's vehicle, the trooper had probable cause to properly support a Pennsylvania search warrant.

¶ 16 Appellee contends that the heightened standard of *Martin*, requiring probable cause, should be applied to the facts of this case. Appellee argues that the instant facts are similar to those in *Martin* in that he was forced to relinquish physical custody of his car and belongings inside so that the canine sniff could be conducted. We are not persuaded.

¶ 17 *Martin* is based on the heightened privacy interests that pertain to one's house or person; the *Martin* case does not advance his claim that a prior judicial determination of probable cause is required for a canine sniff of the exterior of a car. A canine sniff of the air surrounding a car reasonably suspected of containing contraband is less an invasion of the Appellee's privacy interest in his vehicle than is the brief investigatory detention and weapons pat-down of an individual who the police

reasonably suspect of engaging in criminal activity, a police practice that is permitted under both the federal and the state constitutions. *See Commonwealth v. E.M.*, 558 Pa. 16, ——, 735 A.2d 654, 659 (1999) (stating "it is well established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity is a foot.") (citing *Terry, supra*, and *Commonwealth v. Lewis*, 535 Pa. 501, 509, 636 A.2d 619, 623 (1994)).

¶ 18 As noted by Professor LaFave in his treatise on search and seizure:

In *Terry v. Ohio*, the Court upheld a limited warrantless search made upon less than probable cause by balancing the need to search [or seize] against the invasion which the search [or seizure] entails, and thus a similar approach might be taken as to the kind of search [dog sniff] here under discussion. Although there are sound reasons for not employing too generously a graduated model of the fourth amendment, the notion that searches by use of dogs trained to detect narcotics or explosives is a lesser intrusion subject to lesser Fourth Amendment restrictions is sound. This is because this particular investigative technique is a distinct police practice which quite obviously is much less intrusive than other searches.

1 Wayne R. *LaFave, Searches & Seizure: A Treatise on the Fourth Amendment* (2d Ed.) 2 at 375 (internal quotes omitted). Professor LaFave's analysis comports with our own recognition that, because of the limited intrusion involved, officers may effect an investigative stop, consistent with Article 1 § 8 on the basis of a reasonable and articulable suspicion of imminent criminal activity, provided the intrusion on protected interests is sufficiently small and the legitimate State interest sufficiently great. *Johnston, supra*.

¶ 19 The specific circumstances surrounding the canine sniff in this case likewise warrant application of the reasonable suspicion standard. We discern no substantive difference between the locker search in *Johnston* and a vehicle lawfully detained pursuant to a *Terry* stop. Here, the Trooper made an otherwise permissible investigatory stop of Appellee's vehicle based on a reasonable and articulable suspicion that he had committed certain Vehicle Code violations. During this stop, the trooper effected a brief canine sniff of the vehicle based on the further reasonable and articulable suspicion that it contained controlled substances, which he was en route to deliver. This sniff apparently lasted no longer than the questioning that was permissible and involved no seizure of property other than the one necessarily accompanying the stop. Under these circumstances, the intrusion on protected interests, which disclosed only the presence or absence of controlled substances, was sufficiently limited, and the legitimate State interest sufficiently great, to justify the search on the basis of less than probable cause. Given the exigencies inherent in a *Terry* stop, the unintrusive nature of the canine sniff, coupled with the state's legitimate law enforcement objectives, leads us inexorably to the conclusion that any reasonable expectation of privacy that the defendant may have in the area to be examined, namely, the air surrounding his vehicle, is satisfied by a showing of reasonable and articulable suspicion.

¶ 20 Appellee further argues that probable cause was required because the dog searched the interior of his vehicle where his belongings were located. We disagree. The Appellee ignores that he stipulated to the fact that the window was open, the dog was not prompted to enter the vehicle and once he did the search was immediately terminated. We do not believe such a limited intrusion into the vehicle under these particular facts was violative of either Article 1 § 8 or the Fourth Amendment. *See United States v. Stone,* 866 F.2d 359 (10 th Cir.1989) (finding that where a trained dog jumped into the defendant's vehicle prior to alerting to the presence of drugs, "the dog's instinctive action [leaping into the vehicle through an open hatchback] did not violate the Fourth Amendment" because there was no evidence the police asked the defendant to open the hatchback). *Id.* at 364. Accordingly, the marijuana obtained subsequent to the execution of the search warrant was lawfully obtained. The Order of the trial court granting Appellee's suppression motion is reversed, and we remand for further proceedings consistent with this opinion.

¶ 21 Order reversed. Case remanded. Jurisdiction relinquished.