**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Ulises Luna NAVA, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 17, 2008.

Filed Feb. 11, 2009.

Amparito Arriaga, Exton, for appellant.

Nicholas J. Casenta, Jr., Asst. Dist. Atty., West Chester, for Com., appellee.

BEFORE: ORIE MELVIN, CLELAND and POPOVICH, JJ.

OPINION BY CLELAND, J.:

¶ 1 Ulises Luna Nava (Luna), an illegal alien, appeals the November 19, 2007 judgment of sentence and the December 26, 2007 partial denial of his post-sentence motion to modify sentence. His appeal raises the question whether a sentencing court, as a condition of parole, may require an illegal alien, convicted of driving under the influence, to remove himself from the Commonwealth of Pennsylvania within ten days of the beginning of his parole. For reasons that follow, we vacate that portion of his sentence which imposes the condition.

¶ 2 On June 16, 2007 Luna pled guilty to driving under the influence[1] and several Vehicle Code offenses, for which, on November 19, 2007, the Chester County trial court sentenced him to 48 hours to six months imprisonment and imposed costs of prosecution and various fines. In addition, the trial court ordered Luna to report his illegal alien status to the U.S. Department of Immigration and Naturalization Service (INS), to advise the Department of his conviction of driving under the influence, and to leave the United States within ten days of his parole.[2] Trial Court Resentencing, 12/26/2007, at 1 n. 1.

¶ 3 Luna filed a motion to modify his sentence with respect to the deportation feature. He argued the supremacy clause in Article IV of the U.S. Constitution and the Immigration and Nationality Act, 8 U.S.C.A. § § 1101–1524, preempt the immigration field in all relevant respects, including determination of illegal alien status and power to deport, thus depriving state courts of these powers. Accordingly, the trial court modified the sentence by substituting *removal from the Commonwealth of*

*Pennsylvania* for removal from the United States, and further ordered Luna to make all necessary arrangements for a transfer of his supervision to another state or to make other arrangements so re-entry into Pennsylvania could be avoided. Trial Court Resentencing, 12/26/2007, at 1 n. 1.

¶ 4 On December 27, 2007 the INS deported Luna to Mexico. Trial Court Rule 1925 Opinion, 7/14/2007, at 2. On June 2, 2008, during the pendency of this appeal, and ostensibly because of Luna's deportation, the trial court entered an order purporting to close supervision in this case and deeming the fines and costs to be uncollectible, and in its view, thereby rendering moot any further proceedings. *Id.*

¶ 5 On appeal Luna defines the sole question as whether in its resentencing order the trial court erred in determining Luna's immigration status and relying on that determination to order him to leave Pennsylvania within ten days of parole. The Commonwealth adds as a second question whether the appeal is moot.

¶ 6 Luna's appeal challenges the legality of his sentence. As such our standard of review is plenary. If no statutory authority for the sentence exists, the sentence is illegal and will be vacated. *Commonwealth v. Randal*, 837 A.2d 1211, 1214 (Pa.Super.2003).

¶ 7 We will address the issues in reverse order. The Commonwealth contends the trial court's June 2, 2008 closure order renders this appeal moot. We disagree. In view of Luna's deportation to Mexico, we address the mootness issue from the broader perspective that his indefinite absence from the United States may preclude judicial relief. "A case is

---

1. 75 Pa.C.S.A. § 3802(b) (driving under the influence).

2. Luna's incarceration began on November 19 and ended two days later on November 21, 2007. R. 9.

'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *In re T.J.*, 699 A.2d 1311, 1313 (Pa.Super.1997). Stated differently, "[a]n issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." *Rivera v. Pennsylvania Department of Corrections*, 837 A.2d 525, 527 (Pa.Super.2003). Moreover,

> Despite a determination that a case is moot, "[t]his Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court."

*Id.* at 528 (internal citations omitted).

¶ 8 We base our decision on the first and second exceptions.

¶ 9 Luna's case presents a case of great public importance. The current political and public controversy concerning immigration policies in the United States, particularly the enforcement of existing laws, has landed on our state capitol and courthouse steps.[3] The scope of state court authority over immigrants is of local, state and national importance. As Luna's case

so vividly illustrates, some state courts, frustrated by what they view as lax enforcement of deportation laws, may search for state remedies that conflict with federal laws preempting the field.

¶ 10 In addition, Luna's case implicates the power of state courts to fashion limited or full deportations in an arena occupied exclusively by the federal INS. The issue of state court jurisdiction can readily recur in settings, as here, where the issue may become moot before completion of the appellate review process. Whenever a minor criminal offense results in a short term incarceration and parole, any subsequent appellate review can prove meaningless when, as here, the sentence has been carried out. *See Commonwealth v. Bernhardt*, 359 Pa.Super. 413, 519 A.2d 417, 420 (1986) (where, with respect to lengthy incarcerations before preliminary hearings, we held "[p]retrial detentions, such as those in the instant matter, are by their nature temporary. As such it is unlikely that any challenge to pretrial detentions would be afforded full appellate review prior to a defendant's release or conviction."). Luna's incarceration and six months parole ended in May 2008, long before we could have decided his appeal, even though it was promptly filed in January 2008.

¶ 11 We turn next to the substantive issue Luna raises in this appeal. Does a state court have the power to investigate a defendant's immigration status and im-

---

**3.** According to the Migration Policy Institute *(www.migrationinformation.org /data hub/state waws.cfm):* an estimated 35,662,000 foreign-born persons lived in the U.S. in 2006; the inflow in 2006 of foreign born persons was 1,266,264; 604,300 acquired citizenship in 2005. In an article, "Frequently Requested Statistics on Immigration in the United States", by Aaron Terrazas *et al*, October 2007, at the foregoing website, 11,600,000 of the foreign born persons, in 2006, were illegal aliens, and, in 2005, an estimated 1,174,059

were subjected to voluntary or forced deportations. *Id.* It is no wonder that state governments have addressed immigration issues—in 2007, there were 1,059 bills pending in state legislatures in some way touching upon immigration matters. *Id.* According to the transcript of record in this case, in Chester County alone the deportation issue has arisen three times in the context of sentencing. Post–Sentencing Hearing, 12/13/2007, at 2.

pose, as a condition of parole, an illegal immigrant's banishment from the Commonwealth of Pennsylvania?

¶ 12 The federal Immigration and Nationality Law, 8 U.S.C.A. § § 1101–1524 has lodged exclusive jurisdiction in the appointed INS "immigration judges." 8 U.S.C.A. § § 1101(b)(4) and 1229a(a). Neither state courts nor even federal district courts can deport an alien. In *United States v. Phommachanh*, 91 F.3d 1383, 1385 (10th Cir.1996), the Third Circuit Court of Appeals reminded us:

> that [8 U.S.C.A.] § 3583(d) does not authorize a district court to deport a defendant-alien as a condition of supervised release, but that it instead authorizes a district court to impose as a condition of supervised release that a defendant be delivered to the INS for deportation proceedings consistent with the Immigration and Naturalization Act (INA), 8 U.S.C. §§ 1101–1524.

■ ¶ 13 Although state courts clearly have no power to deport an alien, we find a state court does have power to investigate the immigration status of a defendant. We have previously stated "[t]he commission of a new crime violates an implied condition of probation and suggests that the defendant is a poor probation risk. *Commonwealth v. Miller*, 358 Pa.Super. 219, 516 A.2d 1263, 1265 (1986)." *Commonwealth v. Infante*, 850 A.2d 696, 698 n. 2. Inasmuch as an alien illegally remaining in the United States is guilty of a continuing violation of the Immigration and Nationality Act,[4] it follows a state court has a need and interest to know if a defendant will be committing a new or ongoing crime once released on parole. In the same vein, if a state court knows of a defendant's violations of the laws of another jurisdic-

tion, it is sound public policy for the state court system to contact the law enforcement authorities of the other jurisdiction. Here, the trial court, as in *Phommachanh*, properly required Luna to report his status and his conviction to the INS.

¶ 14 The trial court's original sentence required the defendant to leave the United States within ten days of his parole. In its December 26, 2007 order granting the defendant's motion to reconsider that part of the sentence, the court stated it "reluctantly reconsidered and modified its sentence to relieve Defendant of his obligation to remove himself from the United States without a further federal deportation hearing." Trial Court Resentencing, 12/26/2007, at 1 n. 1. The trial court was exactly correct in removing that requirement. The law is very clear that "aliens may be deported only in accordance with the carefully designed federal statutory and regulatory scheme ... Congress has enacted laws governing the admission, expulsion, and deportation of aliens.... Those laws delegate authority to order deportation to the Attorney General and not to the judiciary.... *Nowhere in this detailed statutory scheme is there a provision for a court to deport aliens sua sponte.*" *U.S. v. Abushaar*, 761 F.2d 954, 960 (3rd Cir.1985) (citations omitted; emphasis added).

■ ¶ 15 After properly eliminating the requirement that Luna leave the United States, the trial court improperly substituted a condition which required Luna to "remove himself from the Commonwealth of Pennsylvania within ten days of parole." The trial court justified its directive as fulfilling its "obligation ... to respond to the illegal status of defendants who are

---

4. *See I.N.S. v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984)

(citing 8 U.S.C.A. § § 1302, 1306, 1325(a)).

convicted or plead guilty to criminal offenses in this Commonwealth in order to protect its citizens." Trial Court Resentencing, 12/26/2007, at 1 n. 1. In discussing the purposes of parole, however, our Supreme Court has instructed:

Parole and probation are established variations on the imprisonment of convicted criminals and are primarily concerned with the rehabilitation and restoration to a useful life of the parolee or probationer. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

*Commonwealth v. Quinlan*, 488 Pa. 255, 258, 412 A.2d 494, 496 (1980). With respect to probation, our Supreme Court has stated:

Conditions of probation, though significant restrictions on the offender's freedom, are primarily aimed at effecting, as a constructive alternative to imprisonment, his rehabilitation and reintegration into society as a law-abiding citizen; courts therefore are traditionally and properly invested with a broader measure of discretion in fashioning conditions

of probation appropriate to the circumstances of the individual case.

*Commonwealth v. Walton*, 483 Pa. 588, 598, 397 A.2d 1179, 1184 (1979) (footnotes omitted).

█ ¶ 16 To be valid, a condition of parole must have some significant connection to either the defendant's rehabilitation or the protection of public safety. The sentencing judge offered no explanation why "deportation" from Pennsylvania relates to, let alone promotes, the rehabilitation of a defendant convicted of driving under the influence and without a license, or enhances the protection of our citizens.[5] In fact, the sentencing judge could not have been more clear that the condition of banishment from the Commonwealth was not directed toward either of those ends. We assume the trial court does not propose to protect the citizens of Pennsylvania from drunk drivers by banishing from Pennsylvania everyone convicted of a DUI. Therefore, we can only conclude from the trial court's explanation that the court proposes to protect the citizens of Pennsylvania by banishing illegal aliens from the state.[6] Under the pretext of punishment,

---

5. Because we hold banishment was an unlawful condition of parole in this case, we are not called on to decide whether banishment is an appropriate sentencing option in general. We do note, however, that it has been held that "When the condition orders the probationer ... to leave a broad geographical region, ... the condition ... is usually invalidated. Courts give several reasons for striking down these banishment conditions. A common rationale is that banishment serves neither a rehabilitative nor a public protection function.... A second rationale is that the banishment condition is against public policy because it permits one jurisdiction to 'dump' its criminals on another jurisdiction." *U.S. v. Abushaar*, 761 F.2d at 960. (citations omitted). "To permit one state to dump its convict criminals into another ... would tend to incite dissension, provoke retaliation, and disturb that fundamental equality of political

rights among the several states which is the basis of the Union itself." *People v. Baum*, 251 Mich. 187, 231 N.W. 95, 96 (1930). This view has been widely adopted. *See*, for example, *State v. Pando*, 122 N.M. 167, 921 P.2d 1285 (Ct.App.1996); *State v. Muhammad*, 309 Mont. 1, 43 P.3d 318 (2002); *Com. v. Pike*, 428 Mass. 393, 701 N.E.2d 951 (1998). *Ex parte Scarborough*, 76 Cal.App.2d 648, 173 P.2d 825 (1946).

6. In ruling on Luna's motion for reconsideration the trial judge said in open court: "He [Luna] has to remain outside the Commonwealth with the exception if he needs to come in once to register with adult probation so they can transfer the case. I don't want him here. And if the Superior Court tells me I can't keep him out of the Commonwealth, then let them explain that to the voters." Post–Sentencing Hearing, 12/13/2007, at 9–

and the cover of the sentencing code, the trial judge has fashioned his own solution to the problem of illegal immigration which has perplexed both state and national legislators. The sentencing code, however, cannot be transformed into a tool of immigration reform.

¶ 17 Because it is illegal and, therefore, void, we vacate that portion of the original judgment of sentence and December 26, 2007 modification of sentence which imposes on Luna a directive to remove himself from the Commonwealth of Pennsylvania as a condition of parole, leaving the balance of the court's orders in effect.

¶ 18 Jurisdiction relinquished.

¶ 19 ORIE MELVIN, J., concurs in the result.

10. We caution that intemperate comments of that nature are not appropriate. It is the obligation of judges, especially those who find themselves embroiled in controversial public issues, to refrain from such polemics.