J-S37018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DOUGLAS ENGELBERT, | |
| Appellant | No. 1248 WDA 2015 |

Appeal from the Judgment of Sentence July 15, 2015
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0001764-2014

BEFORE: GANTMAN, P.J., SHOGAN and LAZARUS, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED JUNE 17, 2016**

Appellant, Douglas Engelbert, appeals from the judgment of sentence entered on July 15, 2015, in the Erie County Court of Common Pleas. We affirm.

Prior to trial, Appellant filed a motion to suppress evidence. The suppression court provided the following factual background:

> On June 6, 2014 at approximately 1:45 p.m., Corporal Reed Grenci and Trooper Scott McLean of the Pennsylvania State Police were on patrol at mile marker 17, Interstate 90, Fairview Township, Erie County, Pennsylvania. Corporal Grenci has extensive experience and training in drug and/or contraband Interdiction cases (10 years). He has approximately 200 hours of training and has served as an instructor. He participated in twenty major seizures and has been qualified as an expert witness in that area. He also is trained as a canine handler.
>
> On this particular day, he and Trooper McLean were on an interdiction patrol monitoring the eastbound traffic on Interstate 90. At the time in question, they observed a large diesel truck

with heavily tinted windows. He was only able to recognize the silhouette of the driver. As this is a violation of 75 Pa.C.S.A. § 4524(e)(1), he followed the truck and overtook it. As he was passing it, the driver waived [sic] to him, a movement that Grenci found unusual. He stopped the vehicle and determined that [Appellant] was driving. The vehicle was registered in the State of Utah. Based upon his training and experience, he found it odd that this vehicle would be traveling such a long distance with no apparent load. He ran the plates and determined that the owner was Joel Orton. He also observed that there were no Department of Transportation markings. Having stopped the truck, he approached the driver's side. Trooper McLean approached the passenger side. They noted that [Appellant] was the only occupant. Initially, [Appellant] indicated that the tinting was legal in Utah. However, Corporal Grenci determined otherwise.

Grenci asked [Appellant] about the trip. [Appellant] said he was on his way to Buffalo, New York to pick up a hot tub which he Intended to transport to Utah for his cousin. The trooper found this unlikely given the financial cost of such a trip in this type of vehicle. [Appellant] also appeared overly nervous. He was shaky and wanted the encounter to end. When Grenci asked [Appellant] for his cousin's name, [Appellant] paused for an inordinate period of time and asked the trooper why he wanted to know. Grenci responded because he was a police officer and that's what he did (ask questions). [Appellant] gave the trooper a name, but Grenci didn't believe him. At this point, Grenci believed that [Appellant's] behavior was consistent with others whom he had experienced in other interdiction cases. He also knew that most drugs, especially marijuana, originate from the western United States. Marijuana is grown in northern California, among other places. He also noted that the truck's registration was not in [Appellant's] name. He found this significant because drug dealers often use third party vehicles which allows the driver to claim ignorance of the contents, and permits the owners to thwart asset forfeiture (through an innocent owner defense). There was only a gym bag located in the truck. This was significant because the lack of luggage is unusual for the length of the trip. (Grenci estimated that a one-way trip from Utah to Buffalo would take, at a minimum, three days). After returning to his vehicle Grenci found that [Appellant] had prior arrests including convictions for drug possession and delivery. Considering the circumstances, he

wrote out a warning. However, by that time he had decided that he was going to conduct a canine search of the exterior of the vehicle. He returned to the truck and asked [Appellant] to exit, which he did. He gave him a warning and returned the vehicle documents to him. At that time [Appellant] asked: "Am I free to go?"

Given the totality of the circumstances, and the use of the term "free to go" which Grenci interpreted as confirmation of [Appellant's] prior contact in these kinds of circumstances, he believed that he had reasonable suspicion to detain the vehicle to conduct a canine search for drugs. A canine search was conducted and the dog alerted to the passenger side of the vehicle. At that point, Grenci believed he had probable cause to search the vehicle and conducted a preliminary search of the undercarriage. He found a compartment. He was able to place his hands in the compartment and felt bags. [Appellant] was arrested and the truck was impounded and taken to the Pennsylvania Police Barracks where it was searched. A compartment had been installed on the undercarriage of the vehicle which contained 65 packages of marijuana all weighing approximately one pound per package. At the time of his arrest, the [Appellant] told Grenci that he needed to be taken out of there because he thought he was being trailed. This, too, was significant to Grenci because in these types of drug courier situations a trail vehicle is often used to insure that the drugs end up at the appointed location and also to determine if the vehicle had been interdicted.

Suppression Court Opinion, 12/1/14, at 1-3.

Appellant filed a motion to suppress which the trial court denied in an order filed on December 1, 2014. The case proceeded to a bench trial on May 26, 2015. At the conclusion of the trial, Appellant was found guilty of possession of a controlled substance with intent to deliver, possession of marijuana, and possession of drug paraphernalia. On July 15, 2015, the trial court sentenced Appellant to an aggregate term of eighteen to sixty months

of incarceration. This timely appeal followed. On appeal, Appellant raises one issue for this Court's consideration:

> Whether the [suppression] court erred in denying Appellant's motion to suppress evidence that was obtained following a warrantless search of the Appellant's vehicle in violation of the Appellant's rights under the 4th Amendment to the United States Constitution and Article I of the Pennsylvania Constitution.

Appellant's Brief at 3.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record.... Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

Here, Appellant concedes that Corporal Grenci and Trooper McLean lawfully stopped Appellant's vehicle. Appellant's Brief at 6. Rather, the

issue is whether the warrantless search of the vehicle through use of a canine was supported by reasonable suspicion.[1] *Id*. at 7.

It is well settled that there are three levels of interaction between a citizen and a police officer: a mere encounter, an investigative detention, and a custodial detention. *Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa. Super. 2000).

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Id*. (internal citations and quotation marks omitted).

---

[1] The United States Supreme Court has explained that a police officer may conduct certain unrelated checks, such a as a canine sniff, during a lawful traffic stop. *Rodriguez v. U.S.*, 135 S.Ct. 1609, 1615 (2015). However, the officer may not do so in a way that prolongs the traffic stop, **absent the reasonable suspicion ordinarily demanded to justify detaining an individual**. *Id*. (emphasis added). As will be discussed below, Corporal Grenci had reasonable suspicion, apart from the window tint that caused the initial traffic stop, to believe that Appellant was trafficking a controlled substance. Accordingly, it was permissible to extend the traffic stop to conduct the canine sniff.

Accordingly, we must determine whether the officers were able to point "to specific and articulable facts which, taken together with the reasonable inferences from those facts, reasonably indicate that criminal activity might have been afoot." **Commonwealth v. Rogers**, 741 A.2d 813, 817 (Pa. Super. 1999) (citations omitted). "Furthermore, whether reasonable suspicion exists must be based on the totality of the circumstances." **Id**. (citations omitted).

> It is not the function of a reviewing court to analyze whether each individual circumstance gave rise to reasonable suspicion, but rather to base that determination upon the totality of the circumstances—the whole picture. The evidence collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

**Id**. (citations omitted).[2]

Here, Corporal Grenci testified at the suppression hearing that he focused on Appellant's vehicle because of the window tint. N.T., 11/24/14, at 6. Concluding that the window tint was too dark and violated the Pennsylvania Motor Vehicle Code, 75 Pa.C.S. § 4524(e)(1), Corporal Grenci and Trooper McLean followed Appellant. **Id**. at 6-7. When they approached Appellant's vehicle on the highway, Appellant waved to them. **Id**. at 7-8. Corporal Grenci, a fifteen-year veteran with the Pennsylvania State Police,

_____

[2] We also point out that the use of trained dogs to sniff for the presence of drugs is a search under Article 1 § 8 of the Pennsylvania Constitution. **Rogers**, 741 A.2d at 818 (citation omitted).

- 6 -

testified that he did not recall anyone on the highway ever waving at him, and he thought this was suspect. *Id*. at 3, 8-9. Specifically, he believed Appellant was trying to convey to the police that he was a "good guy" and not doing anything wrong. *Id*. at 8. The troopers conducted a traffic stop based on the suspected illegal window tint and approached the vehicle. *Id*. at 9. Corporal Grenci asked Appellant where he was going, and Appellant informed the corporal that he was driving to Buffalo to retrieve a hot tub from his cousin. *Id*. at 11. The corporal did not believe the hot tub story as it seemed costly and implausible. *Id*. Moreover, Appellant was initially unable to provide his cousin's name and appeared to stall and then make up a name. *Id*. at 12. Appellant's behavior was overly and unusually nervous. *Id*. Corporal Grenci also thought it was suspicious that the truck was registered to a third party because using a vehicle owned by a third party is common among drug traffickers. *Id*. at 12-14. Corporal Grenci noted that drug traffickers use vehicles owned by a third party because, if the vehicle is impounded, the rightful owner can attempt to avoid forfeiture by claiming he was unaware of the illicit use. *Id*. at 14. Additionally, Appellant had no luggage for this long trip, only a small gym bag. *Id*. at 15. Corporal Grenci also determined that Appellant had two marijuana arrests for possession with intent to deliver in Nebraska and California. *Id*. at 17. The truck was very recently registered and insured, which is common with drug traffickers because traffickers will use a vehicle for a finite amount of time and take it

off the street to avoid attracting attention to that vehicle. *Id*. at 18-19. Furthermore, when the corporal handed Appellant back the driver's license, registration, and insurance card, Appellant asked if he was free to go before Corporal Grenci could say anything. *Id*. at 19. Corporal Grenci stated that Appellant's nervousness, impatience, and use of the words "free to go" were suspicious, because the phrase "free to go" is a term specific to law enforcement. *Id*. at 20.

After review, we agree with the suppression court that Corporal Grenci's testimony, viewed together under the totality of the circumstances, supports a reasonable suspicion that criminal activity was afoot, and it permitted Corporal Grenci to investigate his suspicion. *See Rogers*, 849 A.2d at 1190-1191 (providing that a canine sniff search of person requires probable cause but a canine sniff search of the exterior of a vehicle canine sniff need only be supported by reasonable suspicion). Corporal Grenci and his dog are a canine team certified to detect marijuana, hashish, cocaine, methamphetamine, and heroin. N.T., 11/24/14, at 21. The canine sniffed the exterior of the vehicle Appellant was driving and alerted to an area under the truck that contained a hidden after-market compartment. *Id*. at 21-22. "[O]nce a canine sniff of a vehicle's exterior triggers a positive indication, reasonable suspicion of contraband in the vehicle ripens into probable cause." *Commonwealth v. Hernandez*, 935 A.2d 1275, 1285 (Pa. 2007) (citation omitted). The canine alerting Corporal Grenci to this hidden

compartment caused the corporal to reach his hand into the compartment where he could feel the bags and the marijuana buds. N.T., 11/24/14, at 22. The compartment was searched and found to contain sixty-five pounds of marijuana. *Id*. at 22-23.

While no single factor would necessarily suffice to establish reasonable suspicion, when Corporal Grenci's testimony is viewed in its totality, we are satisfied that the suppression court committed no error in denying Appellant's motion to suppress. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

P.J. Gantman joins the Memorandum.

Judge Lazarus files a Concurring Statement in which P.J. Gantman joins.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/17/2016