J-S03030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM EARL RAGER, JR. | : | |
| | : | |
| Appellant | : | No. 565 WDA 2024 |

Appeal from the Judgment of Sentence Entered April 18, 2024
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0000707-2020

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY SULLIVAN, J.: **FILED: APRIL 25, 2025**

William Earl Rager, Jr. ("Rager") appeals from the judgment of sentence imposed following his stipulated guilty plea to driving under the influence ("DUI") – controlled substance or metabolite, DUI – impaired ability, and driving while operating privilege suspended or revoked.[1] Rager claims the trial court erred in denying his motion to suppress. We affirm.

The facts relevant to this appeal are as follows. On June 2, 2019, at approximately 3:30 a.m., Pennsylvania State Police Trooper Jacob Mitchell ("Trooper Mitchell") and Trooper Ochap[2] were on routine patrol. Trooper Mitchell had field sobriety training, had been a midnight patrolman assigned to look for impaired drivers for six years, and had made a large number of

_____

[1] *See* 75 Pa.C.S.A. §§ 3802(d)(1), (d) (2), 1543(a).

[2] Trooper Orchap's first name does not appear in the certified record.

vehicle stops on that basis. *See* N.T., 1/5/24, at 4-5. Rager had his high beams on when the troopers were driving behind him and failed to lower them when the troopers' vehicle passed him and continued for a distance. *See id*. at 6. The troopers initiated a traffic stop for the motor vehicle violation. *See id*. at 6-7.

Trooper Mitchell told Rager the reason for the stop and asked for his driver's license and registration. *See id*. Rager, who admitted his use of the high beams, told Trooper Mitchell the car belonged to his grandmother, who was on house arrest, and he had a suspended license. *See id*. at 7-8. Trooper Mitchel noticed Rager had "glassy, bloodshot eyes" and was "nervous or anxious." *See id*. at 8. The combination of the early hour of the morning, Rager's nervousness, and Rager's glassy, bloodshot eyes led Trooper Mitchell, based on his experience, to suspect Rager could possibly be under the influence of an intoxicant. *See id*. at 8. He decided to investigate Rager's condition. *See id*. at 8-9. He asked Rager, who did not smell of alcohol or have alcohol on his breath, to get out of the car, and conducted an abbreviated battery of field sobriety tests. *See id*. at 8-9, 12. After those shortened tests, Rager consented to a search of his car. *See id*. at 9.[3] When Trooper Mitchell returned to talk to Rager during the search, he saw Rager had bumped his head on the front of the car and was having a seizure, overdose, or other

---

[3] The search produced no results. *See id*. at 10.

medical condition involving spasms. *See id*. Emergency Medical Service personnel were summoned, arrived, and took Rager to the hospital. *See id*. at 9-10. At the hospital, twenty-four minutes after the original stop, Rager consented to a blood draw. *See id*. at 10.[4] At the conclusion of the hearing, the court found there was probable cause for the initial stop, reasonable suspicion existed for the trooper's questions and field sobriety tests, and the stop was not unduly prolonged. *See* N.T., 1/5/24, at 20-22.

Rager was charged with the above-listed offenses and two other, summary offenses and waived his preliminary hearing. He failed to appear for his formal arraignment in October 2020, and for case status conferences in February 2021, and February 2022. In September 2022, he filed a motion to suppress evidence which the court denied after a hearing in January 2024. In April 2024, Rager entered a negotiated guilty plea to the above-listed charges in exchange for which he received a sentence of six months of probation with restrictive DUI conditions, one year of license suspension, including forty days of electronic home monitoring, alcohol highway safety school, a CRN evaluation, and fines, fees, and costs. The parties stipulated Rager retained the right to appeal the denial of his motion to suppress. Rager filed a timely notice of appeal and he and the trial court complied with Pa.R.A.P. 1925.

---

[4] The results of the blood draw were not introduced into evidence at the suppression hearing.

On appeal, Rager presents three issues for our review:

1. Whether the court committed reversible error by failing to conclude the [trooper] unlawfully prolonged the traffic stop beyond what was necessary for the purpose of the stop?

2. Whether the court committed reversible error by failing to conclude that the [trooper] conducted field sobriety tests without reasonable suspicions that criminal activity was afoot?

3. Whether the court committed [sic] by failing to conclude that the [trooper] unlawfully detained [Rager] and searched his vehicle without reasonable suspicion that criminal activity was afoot?

*See* Rager's Brief at 7.

When reviewing an order denying a motion to suppress evidence,

[o]ur standard of review . . . is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. In making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Gindraw*, 297 A.3d 848, 851 (Pa. Super. 2023) (internal citation and brackets omitted).

Rager's first two issues assert the trooper unlawfully prolonged the traffic stop without reasonable suspicion and conducted field sobriety tests that exceed the mission of the stop. He asserts evidence that he was nervous and had "glassy, bloodshot eyes" at 3:30 a.m. did not establish reasonable suspicion to conduct further investigation because he did not smell of alcohol

or marijuana, and that his fall during the detention cannot be considered in that inquiry. **See** Rager's Brief at 10-13.

A seizure for a traffic violation justifies a police investigation of that violation. A traffic stop is "[a] relatively brief encounter . . . more analogous to a . . . **Terry** stop . . . than to a formal arrest." **See Rodriguez v. U.S.**, 575 U.S. 348, 354 (2015) (internal citations and quotation marks omitted). This Court recently emphasized that **Rodriguez** limits the length of police inquiries during a traffic stop to the seizure's "mission," *i.e.*, the time necessary to address the violation and attendant safety concerns:

> In the context of a traffic stop, the United States Supreme Court held that the duration of police inquiries "is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . **and attend to related safety concerns**." **Rodriguez**, 575 U.S. at 354 (citations omitted).[5] A stop becomes unlawful when it "last[s] . . . longer than is necessary" to complete its mission, the rationale being that the "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." The Supreme Court elaborated that "[t]he critical question . . . is not whether the [inquiry] occurs before or after the officer issues a ticket . . . but whether [it] prolongs—, *i.e.*, adds time to—the stop. . .. An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.

---

[5] Vehicle stops that are constitutional under **Terry** satisfy the Pennsylvania constitution. **See Commonwealth v. Chase**, 960 A.2d 108, 117 (Pa. 2008).

*Commonwealth v. Ross*, 297 A.3d 787, 792 (Pa. Super. 2023) (citations omitted) (emphasis added). *Accord Commonwealth v. Sloan*, 303 A.3d 155, 163-64 (Pa. Super. 2023).

During a traffic stop, an officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *Ross*, 297 A.3d at 793. The officer may also check the driver's license, determine whether the driver has outstanding warrants, and inspect the car's registration and proof of insurance. *See Commonwealth v. Malloy*, 257 A.3d 142, 150 (Pa. Super. 2021). Any violation of the motor vehicle code legitimizes a traffic stop, even if the stop is merely a pretext for the investigation of some other crime and even if the violation is a minor offense. *See Commonwealth v. Harris*, 176 A.3d 1009, 1020 (Pa. Super. 2017), citing, *inter alia*, *Whren v. United States*, 517 U.S. 806, 812-13 (1996). If police develop additional suspicions before the mission of the traffic stop is complete, they may continue the stop to investigate the new suspicions. *See Commonwealth v. Chase*, 960 A.2d 108, 115, n.5 (Pa. 2008).

"To establish reasonable suspicion, an officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved

in that activity." **Commonwealth v. Basinger**, 982 A.2d 121, 125 (Pa. Super. 2009) (citation omitted). In assessing reasonable suspicion, this Court considers the totality of the circumstances giving due weight to the officer's experience and the inferences he may draw considering that experience. Even a combination of innocent facts when taken together may warrant the officer's further investigation. **See Commonwealth v. Rogers**, 741 A.2d 813, 817 (Pa. Super. 1999). A police officer has reasonable suspicion when he is "able to articulate something more than an 'inchoate and unparticularized suspicion or hunch'" that criminal activity is afoot. **Alabama v. White**, 496 U.S. 325, 329 (1990), quoting **Terry v. Ohio,** 392 U.S. 1, 22 (1968); *accord* **Commonwealth v. Hughes**, 908 A.2d 924, 927 (Pa. Super. 2006) (stating that the reasonable suspicion standard is less stringent than probable cause). The likelihood of criminal activity sufficient to establish reasonable suspicion "falls considerably short of satisfying a preponderance of the evidence standard." **United States v. Arvizu**, 534 U.S. 266, 274 (2002); even where a person's conduct is equally consistent with innocent activity, a suppression court is not foreclosed from finding reasonable suspicion existed. **See Commonwealth v. Carter**, 105 A.3d 765, 772 (Pa. Super. 2014) (*en banc*). Reasonable suspicion is measured by the totality of the circumstances, **see Rogers**, 741 A.2d 817, and is assessed using an objective standard, without regard to the officer's subjective motivation. **See Commonwealth v. Foglia** 979 A.2d 357, 361 (Pa. Super. 2009). A driver's nervousness and bloodshot,

glassy eyes can contribute to reasonable suspicion permitting the prolongation of a traffic stop. **See Sloan**, 303 A.3d at 166; **Commonwealth v. Galloway**, 265 A.3d 810, 815-816 (Pa. Super. 2021).

The trial court found Rager was nervous, had glassy, bloodshot eyes, and there appeared to be some confusion on his part. **See** Trial Court Opinion, 7/10/24, at 3-4. It found the stop and field sobriety tests could not have lasted for more than ten or fifteen minutes, because within twenty-four minutes of the initial stop, Rager had been stopped, given field sobriety tests, had a medical incident, been transported to the hospital by emergency medical personnel, and consented to a blood draw at the hospital. **See id**. at 4. The court concluded the investigative detention and field sobriety tests were supported by reasonable suspicion and the stop was not prolonged. **See id**. at 8-9.

Rager has not shown the suppression court committed an error of law. Although the record does not clearly support the court's assertions of Rager's confusion,[6] it showed that an officer experienced in detecting impairment

---

[6] We do not agree that the portion of Trooper Mitchell's testimony that mentioned confusion permits the inference Rager was confused. **See** N.T., 1/5/24, at 7-8 (Trooper Mitchell testifies, "At that time [Rager] had admitted to the high beams. And a little bit of confusion from what was conveyed to me, because the vehicle belonged to his grandmother, who I believe he had stated was on house arrest").

observed Rager was anxious or nervous, and had bloodshot, glassy[7] eyes, and had failed to turn off his bright lights for a period after the troopers' vehicle passed his car. Reasonable suspicion must be assessed as of the moment the trooper took Rager from the car. *See Commonwealth v. Jefferson*, 256 A.3d 1242, 1248 (Pa. Super. 2018) (*en banc*). Under the reasonable suspicion standard of review, which accords weight to an experienced officer's observations, the trooper had more than an "'inchoate and unparticularized suspicion or hunch'" that criminal activity was afoot in the form of Rager's possible impairment and hence reasonable suspicion at the time he had Rager step out of the car for field sobriety tests. *White*, 496 U.S. at 329; *see also Rodgers*, 741 A.2d at 817. Although even Trooper Mitchell conceded impairment was only "possible," and there might be innocent explanations for Rager's conduct and demeanor, that is not dispositive of reasonable suspicion, which may be found even where conduct is equally consistent with innocent activity. *See Carter*, 105 A.3d at 772.[8]

Rager's final issue asserts the suppression court erred by finding he properly consented to the search of his car. *See* Rager's Brief at 13-14.

---

[7] "Glassy" is defined as "resembling glass, lifeless, expressionless." *See* American Heritage Online Dictionary.

[8] Although it is not directly germane to the issue here, we note Rager, whose license was suspended, would not have been free to drive from the scene even had Trooper Mitchell not conducted further investigation.

The court found Rager waived the issue at the suppression hearing, and additionally it is moot because the search yielded no evidence that could be the subject of suppression. **See** Trial Court Opinion, 7/10/24, at 9-10.

The court properly ruled. At the suppression hearing, Rager's counsel waived the claim by stating, "I'm not arguing consent[] because nothing was found." N.T., 1/5/24, at 18. In any event, an issue is moot "if in ruling upon the issue the court cannot enter an order that has any legal force or effect." **Commonwealth v. Nava**, 966 A.2d 630, 633 (Pa. Super. 2009) (citation omitted). Rager concedes nothing fruitful was found in the car. **See** Rager's Brief at 14. His request that the search "be deemed invalid," **see id**., thus seeks an order that would not have any legal force or effect, and the claim fails.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/25/2025

- 10 -