J-S43045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KEITH ALEXANDER | |
| Appellant | No. 1066 EDA 2014 |

Appeal from the Judgment of Sentence March 7, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0300451-1994

BEFORE:  GANTMAN, P.J., PANELLA, J., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED NOVEMBER 17, 2015**

Appellant, Keith Alexander, appeals from the judgment of sentence entered in the Philadelphia County Court of Commons Pleas, following the revocation of his probation.  We affirm.

The relevant facts and procedural history of this case are as follows. On January 10, 1995, Appellant pled guilty to two counts of robbery and one count each of possessing instruments of crime and criminal conspiracy.[1] That day, the court sentenced Appellant for each robbery conviction to concurrent terms of two and one-half (2½) to ten (10) years' imprisonment,

_____

[1] 18 Pa.C.S.A. §§ 3701; 907; 903, respectively.

plus ten (10) years' probation.[2] The court imposed no further penalty for the remaining convictions. The record indicates Appellant's probation was set to begin on November 18, 2005, and expire on November 18, 2015. Appellant was paroled on October 1, 2001.

On or about March 19, 2002, while Appellant was still on parole, police arrested Appellant for new crimes. The Commonwealth charged Appellant at docket number CP-51-CR-0702301-2002, with aggravated assault, attempted murder, and related offenses, in connection with Appellant and his co-defendant's shooting of Victim on February 8, 2002, which left Victim paralyzed from the waist down. A jury convicted Appellant on April 1, 2005, of aggravated assault, attempted murder, criminal conspiracy, firearms not to be carried without a license, and persons not to possess firearms ("2005 convictions"). On May 20, 2005, with the benefit of a pre-sentence investigation ("PSI") report, the court sentenced Appellant to an aggregate term of twenty-six and one-half (26½) to fifty-six (56) years' imprisonment for the 2005 convictions.

_____

[2] The court designated Appellant's probationary terms as "special probation," directing the Pennsylvania Board of Probation and Parole ("Board") to supervise the probationary terms. *See* 61 Pa.C.S.A. § 331.17a(a) (stating: "The board shall have exclusive power to supervise any person hereafter placed on probation by any judge of a court having criminal jurisdiction, when the court may by special order direct supervision by the board"). Section 331.17a was repealed by 2009, Aug. 11, P.L. 147 No. 33, § 11(b) (effective in 60 days) and re-codified at 61 Pa.C.S.A. § 6133. The language of Section 331.17a(a) and Section 6133(a) are almost identical. *See* 61 Pa.C.S.A. § 6133(a) (effective October 13, 2009).

Prior to Appellant's 2005 convictions, the Board had revoked Appellant's parole for the underlying robbery offenses based on Appellant's commission of new crimes. Due to the retirement of the judge who presided over Appellant's robbery convictions, however, the trial court did not hold a revocation of probation hearing following Appellant's 2005 convictions. In 2013, the judge who presided over Appellant's 2005 jury trial inquired about the status of Appellant's case and about the probationary term of Appellant's robbery convictions. Court administration subsequently assigned the original 1995 case to that jurist.

On October 16, 2013, the trial court held a revocation of probation hearing for Appellant's robbery offenses based on Appellant's 2005 convictions. The court determined Appellant's 2005 convictions constituted a direct violation of Appellant's probation and revoked probation. The court deferred sentencing pending a PSI report. On January 13, 2014, Appellant filed a *pro se* motion for recusal of the trial judge.[3] The court held a sentencing hearing on March 7, 2014, after which the court sentenced Appellant to five (5) to ten (10) years' imprisonment for one count of robbery; the court imposed a consecutive term of one year of probation at

_____

[3] Appellant was represented by counsel at that time. The record is unclear whether the court forwarded the *pro se* motion to counsel of record. **See** Pa.R.A.P. 3304 (stating: "Where a litigant is represented by an attorney before the [c]ourt and the litigant submits for filing a petition, motion, brief or any other type of pleading in the matter, it shall not be docketed but forwarded to counsel of record").

the remaining robbery count. The court imposed the sentences consecutively to any other sentence Appellant was currently serving. The court also denied Appellant's motion for recusal on that date. On March 13, 2014, Appellant timely filed a motion for reconsideration. While the post-sentence motion was still pending, Appellant timely filed a notice of appeal on April 7, 2014.[4] On April 17, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on May 8, 2014.

Appellant raises four issues for our review:

> DID NOT THE [TRIAL] COURT ERR IN REVOKING PROBATION ON THE BASIS OF A "DIRECT VIOLATION" THAT HAD BEEN DULY ADDRESSED BY THE STATE PAROLE BOARD AT THE TIME OF THE VIOLATION EIGHT YEARS EARLIER, WHERE THERE WAS NO JUSTIFICATION FOR THE DELAY AND WHERE PREJUDICE TO APPELLANT RESULTED?
>
> DID NOT THE TRIAL COURT ERR IN BASING ITS REVOCATION AND RESENTENCING IN PART ON APPELLANT'S HAVING BEEN FOUND GUILTY OF "MISCONDUCT" IN STATE PRISON, WHERE NEITHER THE EXISTENCE OF THE MISCONDUCT CITATIONS NOR THE BEHAVIOR ALLEGED CONSTITUTED A VIOLATION OF THE CONDITIONS OF PROBATION, AND WHERE THE MOST RECENT OF THOSE CITATIONS WAS ISSUED FOUR YEARS PRIOR TO THE REVOCATION HEARING?
>
> DID NOT THE TRIAL COURT ERR IN BASING ITS NEW SENTENCE ON APPELLANT'S REFUSAL TO "ACCEPT RESPONSIBILITY" WITH REGARD TO A SEPARATE

---

[4] **See** Pa.R.Crim.P. 708(E) (stating motion to modify sentence imposed after revocation shall be filed within 10 days of date of imposition; filing of motion to modify sentence will not toll 30-day appeal period).

CRIMINAL MATTER, HIS ASSERTION THAT HIS TRIAL ON THAT SEPARATE MATTER WAS CONDUCTED UNFAIRLY, AND HIS CONTINUING ATTEMPTS TO PURSUE POST-CONVICTION RELIEF AS TO THAT SEPARATE MATTER?

DID NOT THE TRIAL COURT ERR IN REFUSING TO RECUSE ITSELF ON APPELLANT'S MOTION, WHERE THE COURT HAD DEMONSTRATED THE EXISTENCE OR APPEARANCE OF BIAS, ANIMUS, AND A LACK OF IMPARTIALITY TOWARDS APPELLANT BY, *INTER ALIA*: CONDUCTING ITS OWN INVESTIGATION OF A PROBATION CASE IN WHICH IT HAD NO PRIOR INVOLVEMENT, WHICH INVESTIGATION IT INITIATED IN RESPONSE TO APPELLANT'S LEGAL FILLINGS IN AN UNRELATED MATTER; ASSUMING OR ARRANGING TO ASSUME SUPERVISION OF APPELLANT'S PROBATION EVEN THOUGH IT HAD ALREADY CONDUCTED AN INDEPENDENT INVESTIGATION, AND DOING SO WITH THE APPARENT INTENTION OF FINDING HIM IN VIOLATION; AND REFERRING TO APPELLANT AS, AMONG OTHER THINGS, A "LIAR," A "VIOLENT THUG," AND A "ONE-MAN CRIME WAVE"?

(Appellant's Brief at 3-4).

In his first issue, Appellant explains the court did not revoke his probation for the underlying robbery convictions until more than eight years after his 2005 convictions. Appellant argues the eight-year delay in conducting the revocation hearing was unreasonable. Appellant asserts that in the absence of a revocation hearing much sooner, he anticipated an earlier release from prison. Appellant contends he suffered prejudice as a result of the delayed revocation hearing because he has a right to expect finality in his cases. Appellant maintains the sole reason that the revocation hearing did not take place until 2013, is simply because the Commonwealth, court, and Board failed to request it. Appellant claims the Board declined to

take any action relative to Appellant's robbery convictions beyond the revocation of his parole. Appellant avers he had every reason to believe that he knew with certainty and finality, the total length of his sentence, once the Board revoked his parole and took no action regarding his probation. Appellant insists that because the Board did not revoke his probation at the time it revoked parole, Appellant had no reason to expect a future revocation of probation proceeding. Appellant complains the trial court's decision to revoke probation eight years after his 2005 convictions disappointed his reliance on an expected release date. Given Appellant's age, he suggests the court's imposition of an additional five-to-ten year sentence following revocation of his probation effectively converted his already very lengthy sentence into a virtual life sentence. Appellant concludes the court erred by unreasonably delaying his revocation of probation proceeding, resulting in prejudice to Appellant, and this Court should vacate his revocation sentence. We disagree.

Pennsylvania Rule of Criminal Procedure 708 governs proceedings for the revocation of parole and probation and provides, in relevant part:

> **Rule 708. Violation of Probation, Intermediate Punishment, or Parole: Hearing and Disposition**
>
> \* \* \*
>
> **(B)** Whenever a defendant has been sentenced to probation or intermediate punishment, or placed on parole, the judge shall not revoke such probation, intermediate punishment, or parole as allowed by law unless there has been:

> (1)    a hearing held as speedily as possible at which the defendant is present and represented by counsel; and
>
> (2)    a finding of record that the defendant violated a condition of probation, intermediate punishment, or parole.
>
> *    *    *

Pa.R.Crim.P. 708(B).

The Rule does not define the phrase "as speedily as possible," but our courts have interpreted this language to require a hearing within a reasonable time. **Commonwealth v. Christmas**, 995 A.2d 1259, 1262 (Pa.Super. 2010), *appeal denied*, 617 Pa. 628, 53 A.3d 756 (2012). "Rule 708 does not establish a presumptive period in which the Commonwealth must revoke probation; but instead, the question is whether the delay was reasonable under the circumstances of the specific case and whether the appellant was prejudiced by the delay." **Id.** at 1262-63 (quoting **Commonwealth v. Woods**, 965 A.2d 1225, 1227 (Pa.Super. 2009)). "In evaluating the reasonableness of a delay, the court examines three factors: the length of the delay; the reasons for the delay; and the prejudice resulting to the defendant from the delay." **Christmas, supra** at 1263 (quoting **Woods, supra**).

"The measure of delay extends from the defendant's date of conviction or entry of a guilty plea on the new charges to the date the court holds the revocation hearing." **Christmas, supra**. "This Court has previously held delays of fifteen months, two years, and four years are not 'intrinsically

reasonable.'" ***Id.***

"When examining the reasons for delay, the court looks at the circumstances surrounding the delay to determine whether the Commonwealth acted with due diligence in scheduling the revocation hearing." ***Id.*** "[C]ertain delays incident to the scheduling of revocation hearings are reasonable." ***Commonwealth v. Bischof***, 616 A.2d 6, 8 (Pa.Super. 1992)*.* For example, "[t]he court should not fault the Commonwealth for delays resulting from the Department of Corrections' inability to find, transport, or house defendants in their custody." ***Christmas, supra*** at 1263. ***See also Commonwealth v. Clark***, 847 A.2d 122 (Pa.Super. 2004) (holding delay in scheduling revocation hearing due to unavailability of prison beds in county jail did not constitute lack of diligence and unreasonable delay by Commonwealth or court). "Similarly, a court should not attribute to the Commonwealth delays caused by the defendant." ***Christmas, supra***. ***See also Bischof, supra*** (stating where appellant successfully conceals violation or evades arrest, then any consequent delay will be attributed to appellant). Nevertheless, "where the Commonwealth provides no explanation for the delay, the court should not attribute the delay to the defendant; instead, the court should analyze whether the delay prejudiced the defendant." ***Christmas, supra***.

"To demonstrate a violation of a right to a speedy probation revocation hearing, a defendant must allege and prove the delay in holding the

revocation hearing prejudiced him." *Id.* at 1263. Importantly, "there is no *per se* rule of prejudice for technical violations of the Rules of Criminal Procedure." *Id.* In evaluating the prejudice prong of the test, "we must bear in mind the nature of the proceeding. Parole, as well as probation, is primarily concerned with the rehabilitation and restoration of the individual to useful life. It is a discretionary penological measure to which a defendant has no absolute right." *Commonwealth v. Marchesano*, 519 Pa. 1, 6, 544 A.2d 1333, 1336 (1988). "Thus, the controlling consideration at a revocation hearing is whether the facts presented to the court are probative and reliable and not whether traditional rules of procedure have been strictly observed." *Id.* at 6-7, 544 A.2d at 1336.

> Prejudice in this context has been interpreted as being something which would detract from the probative value and reliability of the facts considered, vitiating the reliability of the outcome itself. **One specific purpose of our rule in requiring a prompt revocation hearing is to avoid such prejudice by preventing the loss of essential witnesses or evidence, the absence of which would contribute adversely to the determination. Another is to prevent unnecessary restraint of personal liberty.**

*Id.* at 7, 544 A.2d at 1336 (emphasis added).

Significantly, a defendant who is already incarcerated on the charges which triggered the probation revocation cannot claim the delay in holding a revocation hearing caused him any loss of personal liberty. *Christmas, supra* at 1263. *See also Commonwealth v. Diaz*, 392 A.2d 827, 829 (Pa.Super. 1978) (stating: "[A] probationer awaiting his probation violation

- 9 -

hearing while being imprisoned for another offense does not suffer much if there is a delay in holding the revocation hearing, for he is already imprisoned"). Likewise, "where a conviction on new charges conclusively establishes the defendant's probation violation, the defendant cannot claim a delay in his [revocation] hearing prejudiced him because he lost favorable witnesses and evidence." *Christmas, supra* at 1263-64. *See also Marchesano, supra* (holding defendant suffered no prejudice from delay in holding revocation of probation hearing where he pled guilty to charges which constituted probation violations; in addition, defendant was already incarcerated as result of prior convictions, therefore he was not subject to incarceration as result of any delay in revocation hearing); *Clark*, *supra* (holding more than four year delay in holding revocation of probation hearing did not constitute basis for court to vacate appellant's revocation sentence; appellant provided no specific argument in terms of prejudice suffered due to delay such as deprivation of essential witnesses or evidence; instead, appellant focused solely on length of delay as amounting to prejudice; during period of delay, appellant was still serving sentence imposed as result of convictions which gave rise to probation violation; thus, appellant failed to demonstrate prejudice).

Instantly, on January 10, 1995, Appellant pled guilty to two counts of robbery and other offenses; the court sentenced Appellant that day to concurrent terms of two and one-half (2½) to ten (10) years' imprisonment,

plus ten (10) years' special probation, for each robbery conviction. On October 1, 2001, Appellant was paroled. In 2002, while still on parole, Appellant committed new crimes. A jury convicted Appellant for these new crimes on April 1, 2005. The court sentenced Appellant on May 20, 2005, to an aggregate term of twenty-six and one-half (26½) to fifty-six (56) years' imprisonment. On October 16, 2013, the court held a revocation of probation hearing for Appellant's underlying robbery offenses. Based on Appellant's 2005 convictions, the court revoked probation. The court deferred sentencing until March 7, 2014, at which time the court sentenced Appellant to five (5) to ten (10) years' imprisonment for one of the robbery convictions; the court imposed one year of probation for the remaining robbery conviction.

Initially, the approximate eight year delay between Appellant's 2005 convictions and his 2013 revocation hearing was not "intrinsically reasonable." **See Christmas, supra**. The certified record is unclear why this significant delay occurred. The Commonwealth suggests the delay resulted from administrative oversight following the retirement of the judge who presided over Appellant's 1995 convictions. This "administrative oversight" should not be attributed to Appellant where the record shows no due diligence by the Commonwealth to schedule the revocation hearing sooner. **See Bischof, supra** (holding Commonwealth failed to act with due diligence in scheduling appellant's revocation hearing; Commonwealth

- 11 -

alleged it did not receive certified copy of appellant's new convictions for fifteen months; Commonwealth did not schedule revocation hearing for appellant's underlying crimes until five months after receipt of certified copy of appellant's new convictions; Commonwealth should have scheduled revocation hearing within weeks of receiving certified copy of appellant's new convictions). **Compare Clark, supra** (holding Commonwealth acted with due diligence in scheduling revocation hearing; record demonstrated more than twenty-five attempts by Commonwealth to schedule revocation hearing and transport defendant from state custody so he could be available for revocation proceeding, but each writ for defendant's appearance was canceled due to lack of available beds at county jail).

Nevertheless, in addressing the prejudice prong of the test, the trial court explained:

> [T]here has been a lengthy delay between the probation violation and the revocation hearing. However, Appellant has suffered no prejudice because he has been in custody continuously since 2002 for his crimes that he was later convicted [of] and thus has not lost any personal liberty. Appellant's convictions in 2005 conclusively established his violations of probation. Tellingly, Appellant suffered no prejudice from the delay as he cites no loss of favorable witnesses or evidence. Thus, Appellant cannot meet the requisite prejudice required to avoid suffering the consequences of his continued violent behavior.
>
> Appellant further argues that his direct violation had already been addressed by the State Parole Board at the time of the violation. At the time of Appellant's 2002 arrest he was still subject to state parole. Appellant served 28 months while his case moved to trial. Appellant argued in his October 16, 2013 [revocation] hearing that

the parole board already violated him for the 2002 matter and the probation imposed by [the trial court in 1995] would not start until 2005. However,…Appellant's 2002 actions can be considered an anticipatory breach of…the probationary components of the sentences that were imposed by [the trial court in 1995]. The parole board's ten year jurisdiction is entirely distinct from the trial court's ten year probationary supervision.

In summation, Appellant cannot meet the necessary standards in establishing that the trial court erred in revoking probation and imposing a new sentence.

(Trial Court Opinion, filed July 28, 2014, at 10-11). We agree with the trial court that Appellant failed to demonstrate prejudice under the facts of this case.

Appellant's 2005 convictions constituted a direct violation of his parole and an anticipatory breach of his probation, warranting revocation of his probation. *See Commonwealth v. Nava*, 966 A.2d 630 (Pa.Super. 2009) (explaining commission of new crime violates implied condition of probation); *Commonwealth v. Ware*, 737 A.2d 251 (Pa.Super. 1999), *appeal denied*, 561 Pa. 657, 747 A.2d 900 (1999) (explaining term of probation may and should be construed for revocation purposes as including term beginning at time probation is granted; otherwise, having been granted probation, defendant could commit criminal acts with impunity—as far as revocation of probation is concerned—until she commenced actual service of probationary period; fact that appellant had not commenced serving probation when she committed new offenses did not prevent court from revoking probation).

Additionally, the 2005 convictions were conclusive evidence of Appellant's probation violation. **See Nava, supra**. Consequently, the delay in holding the revocation hearing did not deprive Appellant of the loss of any favorable evidence or witnesses that might otherwise be presented at a revocation hearing. **See Marchesano, supra**; **Christmas, supra**. Further, during the approximate eight (8) year period between Appellant's 2005 convictions and revocation of probation hearing, Appellant remained incarcerated as a result of his 2005 convictions. Thus, Appellant suffered no prejudice arising from a loss of personal liberty. **See Marchesano, supra**; **Christmas, supra**; **Clark, supra**; **Diaz, supra**.

Appellant cites no legal authority to support his arguments that his mere reliance on an expected release date amounts to prejudice for purposes of Rule 708, or that the trial court somehow lacked authority to revoke probation because the Board only terminated Appellant's parole. **See** Pa.R.A.P. 2119(a) (stating argument shall be divided into as many parts as there are questions to be argued, followed by such discussion and citation of authorities as are deemed pertinent); **Commonwealth v. McMullen**, 745 A.2d 683 (Pa.Super. 2000) (holding appellant waived issues for failure to develop them on appeal with citation to relevant statutory authority or case law; when appellant fails to develop his argument adequately, meaningful appellate review is not possible). Moreover, the trial court retained authority to revoke probation and to resentence Appellant for his probation violation,

regardless of any actions taken by the Board. *See* 42 Pa.C.S.A. § 9771(a) (stating: "The court may at any time terminate continued supervision or lessen or increase the conditions upon which an order of probation has been imposed"); *Commonwealth v. Mitchell*, 955 A.2d 433 (Pa.Super. 2008), *appeal denied*, 600 Pa. 744, 964 A.2d 894 (2009) (holding trial court retained power, authority, and jurisdiction to determine whether appellant violated special probation, to revoke it, and to resentence appellant following revocation of special probation, notwithstanding Board's duties of supervision). Therefore, Appellant has failed to establish prejudice for purposes of Rule 708 under the circumstances of this case. *See Marchesano, supra*; *Christmas, supra*; *Clark, supra*; *Diaz, supra*.

Regarding Appellant's remaining issues, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Chris R. Wogan, we conclude Appellant's second, third, and fourth issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of those questions. (*See* Trial Court Opinion at 11-23) (finding: **(issue 2)** in 2005, jury convicted Appellant of attempted murder, aggravated assault, firearms not to be carried without license, and other offenses, which constituted direct violations of Appellant's probation; while in custody for 2005 convictions, Appellant committed prison misconduct by using profanity, refusing to obey orders on two occasions, gambling, and possessing contraband, which

constituted technical probation violations; Appellant's misconduct in prison indicates Appellant will continue to violate laws of Pennsylvania upon his release; in any event, notwithstanding court's consideration of Appellant's prison misconduct at time of revocation hearing, revocation of probation was proper based solely on Appellant's 2005 convictions; **(issue 3)**[5] court based revocation sentence on Appellant's criminal actions in connection with 2005 convictions, which left Victim in wheelchair and permanently paralyzed from waist down, as well as Appellant's prison misconduct; contrary to Appellant's assertions, court did not revoke probation and determine length of sentence based on Appellant's continued pursuit of post-conviction relief in case concerning 2005 convictions; court commented at sentencing on Appellant's refusal to accept responsibility, but court did not base revocation of probation or resentencing on that refusal; in any event, court is permitted to

_____

[5] To the extent Appellant's third issue on appeal implicates the discretionary aspects of sentencing, that claim is waived because Appellant failed to preserve in his post-sentence motion any claim that the court considered improper factors upon resentencing. *See Commonwealth v. Malovich*, 903 A.2d 1247 (Pa.Super. 2006) (explaining appellant must raise claim challenging discretionary aspects of sentencing at sentencing or in post-sentence motion; issues not presented to sentencing court are waived and cannot be raised for first time on appeal). Appellant also did not include the requisite Pa.R.A.P. 2119(f) statement in his appellate brief, but the Commonwealth did not object to that omission, so we can ignore that defect. *See Commonwealth v. Roser*, 914 A.2d 447 (Pa.Super. 2006), *appeal denied*, 592 Pa. 788, 927 A.2d 624 (2007) (stating appellant who challenges discretionary aspects of sentence shall set forth in brief concise statement of reasons relied upon for allowance of appeal per Pa.R.A.P. 2119(f); failure to include Rule 2119(f) statement does not automatically waive appellant's argument where Commonwealth does not object to such deficiency).

consider Appellant's lack of remorse upon resentencing; **(issue 4)**[6] court administration transferred Appellant's case to this jurist's docket following retirement of judge who presided over Appellant's 1995 robbery convictions; court's order directing preparation of PSI report prior to resentencing hearing does not constitute improper "independent investigation" of case; court called Appellant "liar" based on Appellant's materially false statements in court filings relative to 2005 convictions; court's alleged biased remarks also resulted from court's efforts to control its courtroom; court's recognition of Appellant's character and conduct which court observed during revocation proceedings does not rise to level of judicial bias that would warrant recusal;

---

[6] Appellant's fourth issue on appeal concerns the trial court's denial of his *pro se* motion for recusal. Appellant filed this motion while he was still represented by counsel. Generally, there is no right to hybrid representation and *pro se* filings by a counseled defendant constitute legal nullities. **See Commonwealth v. Ellis**, 534 Pa. 176, 626 A.2d 1137 (1993) (holding there is no constitutional right to hybrid representation at trial or on appeal; thus, this Court will not review *pro se* documents filed by represented appellants); **Commonwealth v. Nischan**, 928 A.2d 349 (Pa.Super. 2007) (explaining *pro se* filings submitted by counseled defendants are legal nullities). Thus, Appellant's *pro se* motion for recusal is a legal nullity. Counsel did not file a subsequent motion for recusal articulating the complaints Appellant raised in his Rule 1925(b) statement and now on appeal. Additionally, Appellant did not even include in his *pro se* motion for recusal the same complaints he raised in his Rule 1925(b) statement and now on appeal. Therefore, Appellant's claim that the court erred by denying his recusal motion is waived. **See Commonwealth v. Pappas**, 845 A.2d 829 (Pa.Super. 2004), *appeal denied*, 580 Pa. 712, 862 A.2d 1254 (2004) (explaining party seeking recusal of trial judge must raise objection at earliest stage of proceedings or face waiver of claim). Moreover, even if Appellant had preserved his fourth issue on appeal, we would affirm the denial of relief based on the reasons set forth in the trial court's opinion.

further, Appellant's 2005 case is not "unrelated matter," where 2005 convictions formed basis of probation violations for underlying robbery convictions[7]).   Accordingly, as to Appellant's second and third issues, we affirm on the basis of the trial court's opinion.   Appellant's fourth issue is waived; even if Appellant had preserved this claim, we would affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/17/2015

---

[7] The correct citation for **Commonwealth v. Jones** is 541 Pa. 351, 663 A.2d 142 (1995).

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA    :

         : CP-51-CR-0300451-1994

CP-51-CR-0300451-1994 Comm. v. Alexander, Keith
Opinion    :



.v.          :

7179060981

         : SUPERIOR COURT

KEITH ALEXANDER          :

**FILED**

IJUL 2 8 2014

Criminal Appeals Unit
First Judicial District of PA

**O P I N I O N**

CHRIS R. WOGAN, J.

## Procedural Posture

Appellant originally appeared before The Honorable Arthur Kafrissen, a retired Common Pleas Court judge, on January 10, 1995, and was charged with two counts of Robbery, Possession of Instrument of Crime With/Intent, and Criminal Conspiracy (CP-51-03004511994). The Defendant pled guilty to Robbery and was sentenced to 2 ½ - 10 years in a state correctional facility, followed by 10 years county probation on each Robbery count. Appellant was sentenced to no further penalty on Possession of Instrument of Crime, and Criminal Conspiracy to Commit Robbery. Probation was to start on November 18, 2005 and end on November 18, 2015. The Appellant was paroled on 10/01/2001.

1

On February 8, 2002, while Appellant was on parole, at approximately 8:00 p.m., Maurice Stuart encountered his friend Lamont Reese, also known as "Peanut," near the 30th Street and Huntington Street intersection in Philadelphia, Pennsylvania. Reese explained to Stuart that he was going to rob Appellant Keith Alexander and Terrance Holmes, who were standing across the street. Stuart told Reese that he knew both of the individuals and then he walked to 27th and Lehigh Street. Reese called over to Terrance Holmes, who had crossed the street and was walking toward him. Stuart then began walking off from the intersection. Alexander yelled to him "that's fucked up." Stuart flagged him with a hand down motion and kept walking.

Approximately fifteen to twenty minutes after Reese robbed Holmes; Defendant Alexander drove his motor vehicle to Stuart's location and stopped it directly in front of him. Holmes was seated in the backseat. Holmes then exited the vehicle and walked toward Stuart with a firearm in his hand. Holmes pointed the gun to Stuart's face and asked Stuart "why you let him rob me?" Stuart grabbed Holmes' arm pushing it away from his face; but, Holmes fired the gun, only three to five inches away.

Mr. Stuart was shot several times in the left lower chest and abdomen area and lost consciousness. He suffered two bullet wounds to his abdomen, two additional gunshot wounds on the right-hand side of his lower back, and one in his right

2

shoulder. He was hospitalized for a year and he had several operations. Mr. Stuart remains permanently paralyzed from the waist down.

On March 19, 2002, defendant was arrested and charged with Aggravated Assault, Attempted Murder, Carrying Firearms Without License, Carrying Firearms in Public Street or place, Possessing an Instrument of Crime, Simple Assault, Recklessly Endangering Another Person, and Criminal Conspiracy, (CP-51-CR-0702301-2001) for his attack that left Mr. Stuart partially paralyzed.

Appellant was tried before a jury on March 28, 2005, through April 1, 2005. Appellant was found guilty of Attempted Murder, 18 Pa. C.S. § 2702, Aggravated Assault, 18 Pa. C.S. § 2702,[1] Carrying a Firearm Without a License 18 Pa.C.S. §6106, and Possessing a Firearm by a Person Unauthorized under the Act to carry one, 18 Pa. C.S. §6105.

On May 20, 2005, Appellant appeared before The Honorable Chris Wogan and was sentenced to a mandatory minimum third strike 25-50 years for Aggravated Assault, and a consecutive 1 ½ to 6 years for Carrying Firearms Without a License, for a total of 26 ½ - 56 years. Defendant was sentenced to no further penalty for Attempted Murder; defendant was also given no further penalty for Criminal Conspiracy to Commit Murder.

---

[1] The attempted murder and aggravated assault convictions represented the Appellant's "third strike" for a crime of violence. See Pa.C.S. §9714 (mandatory minimum sentence of 25 years imprisonment for a "third strike" conviction).

3

At the time of Mr. Alexander's 2002 arrest he was still on state parole as a result of the sentence imposed by retired Common Pleas Judge Arthur Kafrissen. On January 10, 1995, Judge Kafrissen imposed a sentence of 2 ½ to 10 years in state prison followed by ten years special probation concurrently on two robbery counts, with probation set to end on November 18, 2015.

On October 16, 2013 this probation was revoked and a pre-sentence report was ordered. On March 7, 2014, Appellant was sentenced to 5-10 years of incarceration for one robbery count and a consecutive sentence of one year probation for the second robbery count.

On April 7, 2014, counsel for Appellant filed a Notice of Appeal to the Superior Court. A Pa.R.A.P. 1925(b) Order was issued on April 17, 2014. On May 8, 2014, Appellant filed his Statement of Matters Complained on Appeal and Statement of Errors Complained of on Appeal.

## Discussion

**Defendant first questions: "a. The trial court erred in revoking probation and imposing a new sentence, where appellant was not yet on probation at the time of the alleged direct violation, where a revocation hearing was not requested or held until approximately eight years after the alleged direct violation and four years after the alleged technical violations, where appellant's direct violation had already been addressed by the State Parole Board at the time of the violation, where no justification was given for the delay, where appellant was prejudiced by the delay, and where the delay therefore violated the provisions of Pa.R.Cr.P. 708(B)(1) as well as petitioner's right to due process of the law under the Pennsylvania and United States Constitutions."**

4

The trial court was correct in revoking probation and imposing a new sentence on the Appellant because the Appellant's 2002 actions that resulted in the convictions in front of Judge Wogan can be considered an anticipatory breach of probation.

A court can revoke a defendant's probation even before the probation has actually begun, where revocation was based on actions occurring during the parole period and not the probationary period. *Commonwealth v. Ware*, 737 A.2d 251 (1999). In addition, technical violations are sufficient to trigger the revocation. *Commonwealth v. Sierra*, 752 A.2d 910 (2001). A court is justified in revoking probation if the technical violations indicate that probation will not be in the best interests of the public or of the defendant. *Commonwealth v. Miller*, 516 A.2d 1263, 1265 (1986). The Superior Court has cited the United States Supreme Court in holding that a court may revoke probation at any time before its completion:

> If, at any time before the defendant has completed the maximum period of probation, or before he has begun service of his probation, he should commit offenses of such nature as to demonstrate to the court that he is unworthy of probation and that the granting of the same would not be in subservience to the ends of justice and the best interests of the public, or the defendant, the court could revoke or change the order of probation. A defendant on probation has no contract with the court. He is still a person convicted of crime, and the expressed intent of the Court to have him under probation beginning at a future time does not "change his position from the possession of a privilege to the enjoyment of right.

5

*Commonwealth v. Wendowski*, 420 A.2d 628, 630, 278 Pa. Super. 453, 457 (quoting *Burns v. United States*, 287 U.S. 216, 222 (1932)).

Here, the trial court correctly and appropriately revoked Mr. Alexander's probation and imposed a new sentence for his 2002 violation of probation for his convictions of Attempted Murder, and Carrying a Firearm Without a License.

Appellant's convictions are an anticipatory breach of probation and his prison misconducts are a direct violation of his probation. Following *Wendowski*, he should be punished accordingly for his additional violations.

Appellant also argues that this court "erred in revoking probation and imposing a new sentence . . . where a revocation hearing was not requested or held until approximately eight years after the alleged direct violation and four years after the alleged technical violations . . . no justification was given for the delay . . . where appellant was prejudiced by the delay, and where the delay violated the provisions of Pa.R.C.P. 708(B)(1) as well as petitioner's right to due process of law under the Pennsylvania and United States Constitutions.

Appellant's argument can be disposed of by first examining Rule 708. Pennsylvania Rule of Criminal Procedure 708 states:

**Rule 708. Violation of Probation, Intermediate Punishment, or Parole: Hearing and Disposition**

\* \* \*

6

Whenever a defendant has been sentenced to probation or intermediate punishment, or placed on parole, the judge shall not revoke such probation, intermediate punishment or parole as allowed by law unless there has been:

(1) a hearing held as speedily as possible at which the defendant is present and represented by counsel; and

(2) a finding of record that the defendant violated a condition of probation, intermediate punishment, or parole.

***

Pa.R.Crim.P. 708.

The language "speedily as possible" means holding a hearing within a reasonable time. *Commonwealth v. Christmas*, 995 A.2d 1259, 1262, 2010 PA Super. 92 (2010). Under Rule 708, the question is whether the delay was reasonable under the circumstances of the particular case and whether the appellant was actually prejudiced by the alleged delay. *Id.* at 1262-63.

A court looks to three factors to determine the appropriateness of the delay: the length of the delay; the reasons for the delay; and the prejudice suffered by the defendant as a result of the delay. *Id.* at 1263 (citing *Commonwealth v. Woods*, 965 A.2d 1225, 1227 (Pa.Super. 2009) (quoting *Commonwealth v. Clark*, 847 A.2d 122, 123-24 (Pa.Super. 2004))).

The length of a delay is measured from the defendant's date of conviction or entry of a guilty plea on the new charges to the date the court holds the revocation hearing. *Christimas* at

7

1263 (citing *Commonwealth v. Bischof*, 420 Pa.Super. 115, 616 A.2d 6, 8 (1992).

In determining the reasons for the delay, the court examines the surrounding circumstances and to evaluate whether the Commonwealth acted with due diligence in scheduling the revocation hearing. *Christmas* at 1263 (citing *Clark, supra* at 124). In cases in which the Commonwealth provides no explanation for the delay, the court should not attribute the delay to the defendant; *rather, the court should look to whether the defendant was actually prejudiced by the delay. Christmas* at 1263 (citing *Woods, supra* at 1228) (emphasis added).

An appellant must allege and prove that the delay in holding the revocation hearing violated the appellant's right to a speedy probation revocation hearing and in turn prejudiced him. *Christmas* at 1263 (citing *Woods, supra* at 1229; *Clark, supra* at 125; *Bischof, supra* at 9). "There is no *per se* rule of prejudice for technical violations of the Rules of Criminal Procedure." *Christmas* at 1263 (citing *Commonwealth v. Marchesano*, 519 Pa. 1, 7-8, 544 A.2d 1333, 1336-37 (1988)). "The controlling consideration at a revocation hearing is whether the facts presented to the court are probative and reliable and not whether traditional rules of procedure have been strictly observed." *Christmas* at 1263 (quoting *Commonwealth v. Marchesano*, at 6-7, 544 A.2d at 1336).

8

A goal of the prompt revocation hearing requirement is to avoid prejudice by preventing the loss of essential witnesses or evidence. *Christmas* at 1263 (quoting *Marchesano, supra*). Another is to prevent unnecessary incarceration and restraint of personal liberty. *Id.* If a defendant is already in custody for charges that prompted the probation revocation then he cannot argue that the delay in holding the revocation hearing resulted in restricting his personal liberty and, therefore, prejudice would not be present. *See Christmas* at 1263 (*citing Clark, supra; Bischof, supra* at 9.

The appellant in *Christmas* pled guilty On July 15, 2004 to two violations of the Uniform Firearm Act ("UFA") and was sentenced to forty-eight months of probation. *Id.* On July 19, 2005, the appellant was arrested for third degree murder and other offenses. *Id.* On April 12, 2007 the appellant pled guilty to third degree murder and possession of a firearm without a license. *Id.* The court sentenced Appellant on these charges to an aggregate of twenty-two and one-half (22 1/2) to forty-five (45) years of incarceration. *Id.*

On December 23, 2008, the court supervising the probation court held a revocation hearing and on February 20, 2009, found appellant's new convictions violated his probation imposed on the 2004 UFA convictions. *Id.* The court revoked appellant's probation and sentenced him to six (6) to twelve (12) years of

9

incarceration, to run consecutive to the sentence imposed on appellant's new convictions. *Id.* at 1261-62.

The *Christmas* court ruled that the appellant's new convictions were conclusive violations of probation and explained that the twenty-month delay between the appellant's new convictions and his probation violation hearing was not intrinsically reasonable. *Id.* (citing *Woods, supra; Clark, supra*). However, because the appellant was already incarcerated for the twenty months delay he suffered no prejudice arising from a loss of personal liberty during the delay. *Christmas* (citing *Clark, supra; Bischof, supra*). The court affirmed the judgment of sentence imposed following revocation of appellant's probation. *Commonwealth v. Christmas* at 1264.

This matter is similar to *Christmas* and should be disposed of in the same manner. Like *Christmas*, there has been a lengthy delay between the probation violation and the revocation hearing. However, the Appellant has suffered no prejudice because he has been in custody continuously since 2002 for his crimes that he was later convicted and thus has not lost any personal liberty. Appellant's convictions in 2005 conclusively established his violations of probation. Tellingly, Appellant suffered no prejudice from the delay as he cites no loss of favorable witnesses or evidence. *See Christmas* at 1264; *Bischof, supra*. Thus, Appellant cannot meet the requisite prejudice

10

required to avoid suffering the consequences of his continued violent behavior.

Appellant further argues that his direct violation had already been addressed by the State Parole Board at the time of the violation. At the time of Appellant's 2002 arrest he was still subject to state parole. Appellant served 28 months while his case moved to trial. Appellant argued in his October 16, 2013 hearing that the parole board already violated him for the 2002 matter and the probation imposed by Judge Wogan would not start until 2005. However, under *Wendowski*, the Appellant's 2002 actions can be considered an anticipatory breach of two of the probationary components of the sentences that were imposed by Judge Kafrissen. The parole board's ten year jurisdiction is entirely distinct from the trial court's ten year probationary supervision.

In summation, the Appellant cannot meet the necessary standards in establishing that the trial court erred in revoking probation and imposing a new sentence.

**Appellant's second claim is: "b. The trial court erred in basing its revocation and resentencing in part on appellant's having been found guilty of 'misconduct' in state prison, where neither the fact of the misconduct citations nor the behavior alleged constituted a violation of the conditions of probation."**

The Appellant's argument is flawed because a trial court may revoke an inmate's probation sentence for misconduct in state prison. Here, the facts of misconduct and the behavior

11

alleged support the court's actions to revoke and resentence the Appellant. Further, the Appellant's probation may be revoked and revised for the aforementioned violations.

Probation may be revoked upon proof of the violation of specified conditions of the probation. 42 Pa.C.S.A. § 9771. A probation violation occurs whenever it is demonstrated that the violator's conduct indicates that probation is an ineffective way to effectively accomplish rehabilitation and prevent future criminal conduct. *Commonwealth v. Ortega*, 2010 PA Super. 87, 995 A.2d 879 (2010, appeal denied, 20 A.3d 1211 (Pa. 2011); *Commonwealth v. A.R.*, 2010 PA Super. 4, 990 A.2d 1 (2010). A court can alter the defendant's probation based on the defendant's behavior. 42 Pa.C.S.A. § 9771.

42 Pa.C.S.A. § 9771 states:

(a)     General Rule.— The court may revoke an order of probation upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.

(b)     Revocation.— The court may revoke an order of probation upon proof of the violation specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.

(c)     Limitation on sentence of total confinement. – The court shall not impose a sentence of total confinement upon revocation unless it finds that:

  (1)     the defendant has been convicted of another crime; or

  (2)     the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

  (3)     such sentence is essential to vindicate the authority of the court.

12

42 Pa.C.S.A. § 9771

Further, probation may be revoked for technical violations. *Commonwealth v. Carver*, 2007 PA Super. 122, 923 A.2d 495 (2007); *Commonwealth v. Sierra*, 2000 PA Super. 151, 752 A.2d 910 (2000). Technical violations have included prison misconduct. *See Commonwealth v. Moore*, 931 A.2d 49 (Memorandum Opinion, Doc. No. 1085 WDA 2006). In *Moore*, the Superior Court affirmed the lower court's decision to revoke and revise the defendant's probation sentence due to a technical violation that occurred while he was incarcerated and explained that a sentencing court may revoke probation when it is proven that the defendant violated specific conditions of the probation. *Moore*, No. 1085 WDA 2006 (citing *Commonwealth v. Infante*, 585 Pa. 408, 419, 888 A.2d 783, 770 (2005)). When a court has determined that probation should be revoked it can institute a punishment of total confinement; "a sentence of total confinement may be imposed if and only if the following conditions exist: (1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely he will commit another crime if he is not imprisoned; or, (3) such a sentence is essential to vindicate the authority of [the] court." *Moore*, at 6 (quoting *Commonwealth v. Hoover*, 909 A.2d 321, 323 (Pa.Super. 2006) (citing 42

13

Pa.C.S.A. § 9771(c); *Commonwealth v. Coolbaugh*, 770 A.2d 788, 792 (Pa. Super. 2001)), 42 Pa.C.S.A. §9771(c).

However, for the purposes of this matter it is of little consequence that this court took the Appellant's prison misconducts into consideration when revoking and resentencing him for probation violations because he was already convicted of attempted murder, aggravated assault, and carrying a loaded firearm without a license. Thus, a sentence of total confinement for probation violations was proper because of the Appellant's conviction in 2005.

The sentencing courts are empowered with a broad standard to utilize in determining whether probation has indeed been violated: "A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." *Infante*, supra at 421, 888 A.2d at 791 (quoting *Commonwealth v. Brown,* 503 Pa. 514, 524, 469 A.2d 1371, 1376 (1983)(citations omitted)).

Further, as stated above, the Superior Court holds:

> If, at any time before the defendant has completed the maximum period of probation, or before he has begun service of his probation, he should commit offenses of such nature as to demonstrate to the court that he is unworthy of probation and that the granting of the same would not be in subservience to the ends of justice and the best interests of the public, or the

14

defendant, the court could revoke or change the order of probation. A defendant on probation has no contract with the court. He is still a person convicted of crime, and the expressed intent of the Court to have him under probation beginning at a future time does not "change his position from the possession of a privilege to the enjoyment of right.

*Commonwealth v. Wendowski*, 420 A.2d 628, 630, 278 Pa. Super. 453, 457 (quoting *Burns v. United States*, 287 U.S. 216, 222 (1932)).

In *Moore*, the Commonwealth presented evidence at the Defendant's *Gagnon II* hearing that he violated specific conditions of his probation. *Moore*, at 7 (citing *Infante, supra*). The court explained that when the defendant flooded his jail cell he engaged in dangerous and threatening behavior, violating conditions of his probation. *Moore*, at 7. Thus, the Superior Court affirmed the trial court's decision to revoke the defendant's probation while he was still incarcerated and prior to the start of his probationary period. *Moore*, at 7 (citing *Hoover, supra; Wendowski, supra*). Further, the Superior Court explained that the defendant's conduct indicated that it was likely he would re-offend if not imprisoned and that total confinement was necessary to control the defendant. *v. Moore*, at 7-8, (citing *Hoover, supra; Coolbaugh, supra*).

The Appellant committed the following violations while in state custody: using profanity in 2005, for which he received 30 days of disciplinary custody; refusing to obey an order in 2007, for which he received 30 days of disciplinary custody; for

15

gambling in 2008, which he received 75 days in disciplinary custody; for refusing to obey an order in 2008, for which he received 45 days; and for possession of contraband in 2009, which he received 30 days of disciplinary custody.

The Appellant's misconducts fall within the purview of technical violations and therefore probation should be revoked for this behavior. The technical violations while in state custody make it highly likely that he will continue to violate the laws of Pennsylvania upon his release.

Therefore, the trial court did not err in considering the Appellant's prison misconducts in revoking and resentencing the Appellant for probation violations.

**Appellant's third claim is: "c. The trial court erred in basing its new sentence on appellant's refusal to 'accept responsibility' with regard to a separate criminal matter, his assertion that his trial on that separate matter was conducted unfairly, and his continuing attempts to pursue post-conviction relief as to that separate matter."**

The Appellant is incorrect in his argument that this court based its new sentence on his assertion that his trial on a separate criminal matter was conducted unfairly, and/or his continuing attempts to pursue post-conviction relief as to the separate criminal matter. Rather, this court based its new sentence on Appellant's criminal actions in which he left his victim in a wheelchair and paralyzed from the waist down for the rest of his life as well as his misconducts in prison.

16

Appellant's argument is also flawed because a trial court may consider the offender's remorse or lack of remorse prior to sentencing.

Simply, the Appellant's argument that the trial court based its new sentence solely on Appellant's refusal to accept responsibility for his actions is without merit.

Contrary to Appellant's contentions, it is entirely appropriate for this court to base its new sentence on appellant's failure to 'accept responsibility.' A trial judge may consider many factors when imposing a sentence, including: the seriousness of the offense; the situation that faced first responders; the impact of the crime on the victim's family and friends; the **defendant's unwillingness to accept responsibility**; and defendant's misconduct while incarcerated. *Commonwealth v. Miller*, 2009 PA Super 14, 965 A.2d 276, 280 (2009)(emphasis added).

Additionally, the Superior Court has held that the trial court is in the best position to judge the defendant's character and sentence appropriately:

> We must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. An appellate court will not disturb the lower court's judgment absent a manifest abuse of discretion. In order to constitute an abuse of discretion, a sentence must either exceed the statutory limits or be so manifestly excessive as to

17

constitute an abuse of discretion. Further, a sentence should not be disturbed where it is evident that the sentencing court was aware of sentencing considerations and weighed the considerations in a meaningful fashion.

*Commonwealth v. Miller* at 277 (quoting *Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa. Super. 2000)).

Although the trial court based its decision of revoking and resentencing for probation violations on Appellant's criminal actions, if the trial court had based its decision on Appellant's reluctance to accept responsibility it would have been permitted to do so.

Specifically, the court stated, during the October 16, 2013 hearing: "Eleven years after you helped put a man in a wheelchair, you're still not sorry for it. You still don't show any remorse. You still don't accept any responsibility."

The court was pointing to the Appellant's lack of remorse after serving over eleven years in prison, which is indicative of the Appellant's potential to reoffend.

The Appellant's unwillingness to accept responsibility and the consequences of his actions is clear evidence that he believes his behavior is acceptable. Thus, it is proper for this court to incorporate the Appellant's refusal to accept responsibility for his actions into the sentence.

18

The trial court did not err in considering the Appellant's behavior and failure to accept responsibility for his violent crimes when fashioning an appropriate sentence.

**Appellant's fourth claim is: "d. The trial court erred in refusing to recuse itself on appellant's motion, where the court had demonstrated the existence or appearance of bias, animus, and lack of impartiality towards appellant by, *inter alia*: conducting its own investigation of a probation case in which it had no prior involvement, which investigation it initiated in response to appellant's legal filings in an unrelated matter; assuming or arranging to assume supervision of appellant's probation even though it had already conducted an independent investigation, and doing so with the apparent intention of finding him in violation; and referring to appellant as, among other things, a "liar," a "violent thug," and a "one-man crime wave."**

The Pennsylvania Supreme Court presumes that judges of its courts are "honorable, fair and competent," and, when faced with a demand for recusal, can determine on their own whether they can hear the case impartially and without prejudice. *Commonwealth v. Kearney*, 2014 PA Super. 97 (Pa. Super. Ct. May 6, 2014) (quoting *Commonwealth v. White*, 557 Pa. 408, 734 A.2d 374, 384 (1999)). A trial judge should recuse himself when a reasonable question of impartiality is presented, even if actual prejudice is not found; however, a judge's recusal decision will not be bothered unless there is an abuse of discretion or bias. *Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078 (1993). Recusal of a judge is unnecessary unless there is an allegation or showing of specific prejudgment or bias against the

19

petitioner . . . . *Commonwealth v. Jones*, 541 Pa. 361, 663 A.2d 142 (1995). The party seeking disqualification bears the burden of producing evidence that demonstrates the bias, prejudice, or unfairness that requires the trial judge's recusal. *Kearney*, 2014 PA Super. 97 (citing *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727, 731 (1983)).

Here, the court called the Appellant a liar because he has lied throughout his PCRA petition concerning the victim's inability to speak while in intensive care with tubes inserted in his throat. The court is not required to ignore the petitioner lying about what happened at trial and this recognition does not constitute bias.

However, alleged bias based on the words of the trial judge and that allegedly result from the facts revealed from the matter will **rarely** be grounds for recusal. *Kearney* 2014 PA Super. 97 (citing *Commonwealth v. Druce*, 577 Pa. 581, 848 A.2d 104, 110 (2004)) (emphasis added). The recent *Kearney* opinion cited *Liteky* in support of its decision:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they displace a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, **judicial remarks during the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties or their cases, ordinarily do not support a bias or partiality challenge.** They may do so if they reveal an opinion that derives from **an**

20

**extrajudicial source**; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible . . . . **Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger,** that are within the bounds of what imperfect men and women, even after having been confirmed as [ ] judges, sometimes display. **A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.**

*Commonwealth v. Kearney*, 2014 PA Super. 97 (quoting *Liteky v. U.S.* 510 U.S. 540, 555-56, 114 S.Ct. 1147 (some emphasis in original, some emphasis deleted, some emphasis added) (citations omitted).

Here, the trial judge's remarks were in an effort to control his courtroom and fall within the precedent cited herein.

Some examples cited by the Appellant are as follows:

You make up stories about things I've said. I haven't seen you since the sentencing, you liar. You've been demanding that I recuse myself. You don't like me having your case because I do my job. That's what you don't like.

March 7, 2014 VOP sentencing hearing (22:20-:25).

Twelve years later, this is no longer a guessing project. This is now known after twelve years that you don't have one shred of remorse for what you did to that poor victim. You haven't accepted any responsibility and you keep blaming detectives and blaming the victim when the only people who weren't truthful about any of this were you and Mr. Holmes.

My obligation hasn't ended. I know approximately when you're supposed to be paroled, but I will say you are a violent thug who frightens me, who frightens. It's incredible that you have with – I read in this report that you're only out for eight months or so and you've been in custody since the date of your arrest on March

21

18, 2002 and you still manage to get 28 adult arrests. How did you do that? You're a one man crime wave, a one man crime wave. And, yes, you are a danger to society.

March 7 VOP sentencing hearing (50:14-51:10).

These comments by this court fall into the *Liteky* precedent as they do not support a bias against the Appellant. Rather, it was this court's efforts to control its courtroom.

The *Liteky* Court went on:

As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *In re J.P. Linahan, Inc.,* 138 F.2d 650, 654 (C.A.2 1943). **Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings.** It has long been regarded as normal and proper for a judge to sit in the same case upon its remand and to sit in successive trials involving the same defendant.

*Kearney,* (quoting *Liteky, supra* at 551 (emphasis added). *Accord Commonwealth v. Bryant,* 328 Pa.Super. 1, 476 A.2d 422, 424 n. 1 (1984) ("A judge is not automatically disqualified from hearing a case merely because he has presided over prior cases involving the same defendant.") (citations omitted).

22

Moreover, it is ludicrous to assert that the trial court conducted its own independent investigation in this case. Judge Kafrissen's probation case was properly assigned to this court by court administration. The Appellant seems to argue that once a judge retires, as Judge Kafrissen has, then all of his probationary sentences disappear and it is somehow improper for a sitting judge to be assigned such cases. Further, a judge reading a presentence report which contains a defendant's criminal record does not equate to the court conducting its own independent investigation. Simply, it is patently absurd to call the PCRA case an "unrelated" matter as the appellant has. A conviction in 2005 which violates probation from a 1995 case is clearly related and the Appellant's pro se distortions of trial testimony show that paralyzing the victim means absolutely nothing to him.

**Appellant's fifth claim is: "e. The trial court's sentence of five to ten years, imposed consecutively to a twenty-five to fifty year sentence already being served, was excessive and an abuse of discretion, insofar as it was vastly disproportionate to the technical violations alleged, far surpassed what was necessary to protect the community or foster appellant's rehabilitation, and was the produce of bias and animus on the part of the court."**

The Appellant is incorrect in his argument that this court's sentence was excessive and an abuse of discretion. The sentence was appropriate and within this court's rights.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be

23

disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (quoting *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted)).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 P.C.S.A. § 9721(b), that is, protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant . . . ." *Id.* When crafting a sentence, a court must take into account the circumstances of the crime and the character of the defendant. *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied*, 582 Pa. 671, 868 A.2d 1198 (2005) *cert. denied*, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). This court did exactly that in crafting its sentence. As this court stated in the October 16, 2013 VOP Hearing:

> You always wonder, if you're a judge, am I striking the balance right, am I really protecting society by giving him a 26-1/2 year minimum sentence when I could have given him a 35 year, perhaps, minimum sentence? There's a chance that he can be rehabilitated.
>
> I know now you can never be rehabilitated. You put this individual in a wheelchair on February 8, 2002. This is 11-1/2 years later. And all the things you filed. You're still calling him a liar. You're

24

stilling calling the detective a liar. You have no potential for remorse.

October 16, 2013 VOP Hearing, 51:21-52:08.

The court clearly took into account the circumstances of the crime and the character of the defendant when crafting a sentence for the Appellant's violations of probation. *See Griffin, supra.* Also, the court reiterated its responsibility in the March 7, 2014 VOP sentencing proceeding: "When I framed those sentences back in 2005, my obligation was to balance my duty to protect the public against your potential for rehabilitation." March 7, 2014 VOP Sentencing, 49:24-50:03.

This court's VOP sentence of five to ten years, imposed consecutively to a twenty-five to fifty year sentence already being served was an attempt to balance the public's protection against the Appellant's potential for rehabilitation and in no way an abuse of this court's discretion. *See Commonwealth v. Ware*, 737 A.2d 251, 254 (Pa. Super. 1999) (sentencing court empowered to impose statutory maximum upon revocation of probation); *Commonwealth v. McAfee*, 849 A.2d 270 (Pa. Super. 2004), *appeal denied*, 580 Pa. 695, 860 A.2d 122 (2004) ("the trial court was correct in determining that a sentence of total confinement was necessary to vindicate the authority of the court because [a]ppellant had demonstrated an unwillingness to

25

comply with the multiple court orders entered in this case. We find no abuse of discretion in sentencing").

Based on the above, it is clear that there was no abuse of discretion where this court imposed an individualized sentence balancing its duty to the public with the Appellant's total lack of potential for rehabilitation.

## Conclusion

The issues raised in defendant's appeal are without merit. Defendant's VOP sentences should remain.

**BY THE COURT:**

CHRIS R. WOGAN, J.